EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Efrén A. Negrón Ramírez<br><br>Recurrido | Certiorari<br><br>2024 TSPR 41<br><br>213 DPR \_\_\_ |

Número del Caso: CC-2023-0210

Fecha: 23 de abril de 2024

Tribunal de Apelaciones:

    Panel Especial

Oficina del Procurador General:

    Hon. Fernando Figueroa Santiago
    Procurador General

    Lcda. Mabel Sotomayor Hernandez
    Subprocuradora General

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Marie Díaz De León
    Procuradora General Auxiliar

    Lcda. Liza M. Delgado González
    Procuradora General Auxiliar

Abogada de la parte recurrida
Sociedad para Asistencia Legal:

    Lcda. Marangely González Correa

Materia: Derecho Penal – No procede sustituir el criterio del juzgador de los hechos cuando la prueba testifical estuvo basada, entre otras, en movimientos, gestos y demostraciones no verbales en corte, y no concurren las excepciones para apartarse de esta norma de revisión judicial.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                    CC-2023-0210     *Certiorari*

Efrén A. Negrón Ramírez

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 23 de abril de 2024.

En el presente caso nos corresponde determinar si el Tribunal de Apelaciones erró al revocar parcialmente una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, mediante la cual un Jurado encontró al Sr. Efrén Negrón Ramírez (en adelante, "señor Negrón Ramírez") culpable, entre otros delitos, de incesto. Artículo 131 del Código Penal de Puerto Rico, *infra*. Lo anterior, basado en que, a juicio del foro apelativo intermedio, la prueba testifical presentada por el Ministerio Público durante los procesos celebrados en el Tribunal de Primera Instancia, -- examinada

por dicho foro a través de la transcripción presentada ante sí --, y que fuese en su día percibida y creída por el Jurado, no probó más allá de duda razonable el elemento esencial de penetración del delito de incesto, por el cual se le acusaba al señor Negrón Ramírez.

Adelantamos que, luego de un examen de la transcripción de la prueba desfilada en corte, así como del derecho aplicable, revocamos la determinación del Tribunal de Apelaciones y, en consecuencia, reinstalamos en su totalidad el dictamen emitido por el Tribunal de Primera Instancia mediante el cual se encontró culpable al señor Negrón Ramírez de todos los delitos imputados en su contra. Esto, y como se expondrá más adelante, por entender que, en lo relacionado al delito de incesto por el cual fue encontrado culpable este último, el foro apelativo intermedio abusó de su discreción al sustituir la apreciación de la prueba testifical que -- en el caso de marras -- realizó el Jurado, sin que concurrieran para ello las excepciones reconocidas por nuestro ordenamiento jurídico.

Máxime, cuando, bajo los hechos particulares de este caso, y en lo referente al delito de incesto por el cual se le acusó al señor Negrón Ramírez, la prueba testifical desfilada ante el foro primario estuvo basada, entre otras, en **movimientos, gestos y demostraciones no verbales** que hizo la testigo en corte y que fueron vistos, correctamente apreciados y creídos por el juzgador de hechos. Lo cual,

según determinó el Jurado, demostró -- más allá de duda razonable -- que el señor Negrón Ramírez realizó una penetración vaginal digital según tipificada en el Artículo 131 del Código Penal de Puerto Rico, *infra*. Veamos.

## I.

Los hechos que dieron margen al presente proceso criminal se remontan a los meses de agosto de 2007, el verano del año 2009, y los primeros meses del año 2016. Por hechos ocurridos en esas fechas, el Ministerio Público presentó, en contra del señor Negrón Ramírez, un total de seis (6) denuncias. En específico, se le imputaron: una violación al Artículo 144(a) del derogado Código Penal de Puerto Rico de 2004, 33 LPRA ant. sec. 4772 (actos lascivos); tres (3) infracciones al Artículo 133(a) del Código Penal de Puerto Rico de 2012, 33 LPRA sec. 5194 (actos lascivos); una violación al Artículo 131 del Código Penal de Puerto Rico de 2012, *infra* (incesto); y una infracción al Artículo 75 de la derogada Ley para el Bienestar y Protección Integral de la Niñez, Ley Núm. 177-2003. 8 LPRA ant. sec. 450c. Esto, luego de que el señor Negrón Ramírez hubiese sometido a dos sobrinas suyas a actos constitutivos de los ya referidos delitos.[1]

En síntesis, y en lo pertinente a la controversia que nos ocupa, relativa al delito de incesto, el Ministerio

---

[1] **Dado que la controversia planteada ante nos atañe únicamente lo referente al delito de incesto, prescindiremos de reseñar los hechos relativos a los demás delitos imputados.**

Público alegó que, para principios del año 2016, el acusado señor Negrón Ramírez llevó a cabo una penetración vaginal digital contra la menor TIRN de once (11) años de edad, su sobrina. En específico, se adujo que éste, colocando su mano por debajo de la ropa interior de ésta, introdujo sus dedos en la vagina de la menor, haciendo movimientos de arriba hacia abajo.

Presentadas las correspondientes denuncias, y habiéndose determinado causa probable en las etapas anteriores a juicio, se dio inicio al juicio penal en su fondo durante el mes de diciembre de 2021. Cabe señalar que el referido juicio se celebró ante un panel de jurados.

En cuanto a la prueba testifical presentada por el Ministerio Fiscal, la misma se basó en los testimonios de la señora GSR; la señora ERMN; la señora MNR; la agente de la Policía de Puerto Rico, Amarilis Sotomayor Pérez; y el testimonio de la menor TIRN y el de la joven NIRN. Éstas últimas dos, víctimas de los delitos imputados. Por su parte, el acusado presentó como prueba de defensa el testimonio de la señora AMRR, su madre.

Desfilada y evaluada la totalidad de la prueba, el Jurado rindió un veredicto unánime de culpabilidad en todos los delitos imputados al señor Negrón Ramírez.

Así las cosas, el Tribunal de Primera Instancia dictó sentencia contra el ahora convicto señor Negrón Ramírez, condenándolo a satisfacer una pena de setenta y dos (72)

años y seis (6) meses de prisión. Esto, luego de aplicar las disposiciones del Código Penal relativas al concurso real de delitos, Art. 71 (b), Código Penal de Puerto Rico, 33 LPRA sec. 5104; y de imponer el correspondiente aumento en la pena debido a la reincidencia simple que fuera aceptada antes del juicio por el entonces acusado.

Inconforme con dicho resultado, el señor Negrón Ramírez presentó ante el Tribunal de Apelaciones una *Apelación criminal*. En ésta, se limitó a realizar dos señalamientos de error, a saber: (1) erró el juzgador de hechos al emitir un veredicto de culpabilidad cuando no se probó la culpabilidad del acusado más allá de duda razonable; y, más en específico, (2) que el Ministerio Público no probó el elemento esencial de penetración del delito de incesto y, por tanto, no rebatió la presunción de inocencia que cobijaba al señor Negrón Ramírez. Véase, Apéndice de la *Petición de certiorari*, pág. 26.

En oposición, el Pueblo de Puerto Rico compareció ante el foro apelativo intermedio mediante su *Alegato del Pueblo*. En síntesis, el Procurador General sostuvo que el Ministerio Público logró probar su caso más allá de duda razonable, -- en todos los delitos imputados al señor Negrón Ramírez --, razón por la cual la determinación del foro de instancia debía sostenerse ante la ausencia de pasión, parcialidad, prejuicio o error manifiesto.

Así pues, evaluados los alegatos de las partes y la transcripción de la prueba testifical del caso, el Tribunal de Apelaciones emitió una *Sentencia* mediante la cual, si bien confirmó las convicciones emitidas por el Tribunal de Primera Instancia en cuanto a todos los cargos por el delito de actos lascivos y el cargo por el delito de maltrato de menores imputados, revocó la convicción en cuanto al delito de incesto.

En cuanto a este último delito, el foro apelativo intermedio razonó que la prueba testifical presentada por el Ministerio Público durante el juicio, -- examinada por dicho foro a través de la transcripción presentada ante sí --, y que fuese en su día percibida y creída por el Jurado, no probó más allá de duda razonable el elemento esencial de penetración del delito de incesto. Por tanto, el Tribunal de Apelaciones entendió que procedía la revocación de la convicción por dicho delito al existir ausencia de prueba sobre los elementos del mismo.

Insatisfechos con esta determinación, tanto el Ministerio Público, como la defensa del señor Negrón Ramírez, presentaron sendas mociones de reconsideración. Sin embargo, ambas fueron denegadas por el Tribunal de Apelaciones.

No conformes con el proceder del foro apelativo intermedio, el Pueblo de Puerto Rico, representado por el Procurador General, comparece ante esta Curia mediante una

*Petición de certiorari*. En síntesis, éste nos solicita que revoquemos la determinación del Tribunal de Apelaciones y reinstalemos, en su totalidad, la sentencia dictada por el Tribunal de Primera Instancia. En la alternativa, nos insta a que modifiquemos la *Sentencia* del Tribunal de Apelaciones para encontrar culpable al señor Negrón Ramírez por el delito de actos lascivos, un delito menor incluido en el de incesto, según alega el Procurador. A esos fines el Procurador General destaca los siguientes dos (2) señalamientos de error en la determinación del foro apelativo intermedio:

> [1] El Tribunal de Apelaciones cometió un craso error de derecho al sustituir – con una simple transcripción – la valoración que el Jurado realizó de la prueba y revocar la convicción del señor Negrón Ramírez por el delito de incesto, tipificado en el Código Penal de Puerto Rico, tras erróneamente concluir que no hubo penetración.

> [2] El Tribunal de Apelaciones incidió crasamente al exonerar de culpa al recurrido del delito de incesto, en lugar de ejercer su facultad bajo la Regla 213 de Procedimiento Criminal, 34 LPRA Ap. II, aplicada en *Pueblo v. Candelario Couvertier*, 100 DPR 159 (1971) y *Pueblo v. Ayala García*, […][186 DPR 196 (2012)] y hallarlo culpable del delito de actos lascivos, un delito menor incluido. Pág. 16 de la *Petición de certiorari*.

Por su parte, la defensa del señor Negrón Ramírez comparece ante nos mediante un *Alegato del recurrido* y nos solicita que confirmemos la determinación del Tribunal de Apelaciones. En esencia, la defensa arguye que habiendo sido revocada la convicción por el delito de incesto, el señor Negrón Ramírez está protegido contra la reinstalación de la

misma en virtud de la protección constitucional contra la doble exposición. De igual forma, sostiene que el Ministerio Público no probó más allá de duda razonable los elementos del delito de incesto, puesto que, durante el juicio, no se presentó prueba sobre el elemento de penetración.

Expedido el auto, y contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver. Procedemos, pues, a así hacerlo, no sin antes expresar que, debido a que no es pertinente para la adjudicación y la determinación a la que llegamos en este caso, no discutiremos el segundo señalamiento de error que hiciere el Pueblo de Puerto Rico en el que se plantea que, en la alternativa, debía encontrarse al señor Negrón Ramírez culpable del delito de actos lascivos, un delito alegadamente menor incluido en el de incesto.

II.

A.

El delito de incesto se encuentra tipificado en el Artículo 131 del Código Penal de Puerto Rico (en adelante, "Código Penal"). 33 LPRA sec. 5192. El mismo dispone que incurrirán en la comisión de dicho delito las personas que teniendo "una relación de parentesco, por ser ascendiente o descendiente, por consanguinidad, adopción o afinidad, o colateral por consanguinidad o adopción, hasta el tercer grado, o por compartir o poseer la custodia física o patria potestad", realicen, a propósito, con conocimiento o

temerariamente, un acto orogenital o una penetración sexual vaginal o anal, ya sea ésta genital, digital o instrumental. *Íd.*

Sobre el acto sexual prohibido, el Código Penal, en su Artículo 132, también dispone que, "cualquier acto orogenital o penetración sexual, vaginal o anal, ya sea ésta genital, digital o instrumental, por leve que sea, bastará para consumar el delito [de incesto]". 33 LPRA sec. 5192.[2] Esto es así debido a que el bien jurídico tutelado por el referido delito es la integridad física, síquica y emocional de la víctima, al igual que su dignidad. *Íd.*

Conforme a ello, entre los elementos objetivos del delito de incesto se encuentran: (1) que se configure alguna de las conductas sexuales tipificadas y (2) que las personas actoras se encuentren dentro de los grados de parentesco prohibidos por el artículo penal. D. Nevares Muñiz*, Código Penal de Puerto Rico,* comentado, 4ta ed., San Juan, Inst. Desarrollo del Derecho, 2019, pág. 220.

### B.

De otra parte, es materia conocida que, en nuestro ordenamiento jurídico, para que una persona acusada sea encontrada culpable por la comisión de un delito, es necesario que el Ministerio Público presente prueba sobre

---

[2] Sobre el particular, este Tribunal ha expresado desde hace más de un siglo que para determinar que hubo una penetración sexual bastará la más "ligera penetración", por más leve que sea. Véase, *Pueblo v. Cancel*, 13 DPR 178, 186 (1907); *Pueblo v. Pérez Rivera*, 129 DPR 306, 317 (1991) (Sentencia).

cada uno de los elementos del mismo, así como de su conexión con el acusado y sobre la intención criminal de este último (entiéndase, el elemento subjetivo del delito). *Pueblo v. Santiago Collazo y otros*, 176 DPR 133, 142 (2009); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000); *Pueblo en el interés del menor F.S.C.*, 128 DPR 931, 941 (1992). En lo que respecta al elemento subjetivo del delito de incesto, el Código Penal dispone que es necesario probar que la persona ha incurrido en la conducta prohibida "a propósito, con conocimiento o temerariamente". Véanse, Artículos 21 y 22 del Código Penal, 33 LPRA secs. 5034 y 5035.

Así pues, para lograr una convicción por el delito de incesto, el Ministerio Público viene obligado a presentar prueba suficiente sobre: (1) la existencia de una relación de parentesco dentro de los grados prohibidos entre la víctima y el victimario; (2) la realización de cualquier acto orogenital o de una penetración sexual vaginal o anal, ya sea ésta genital, digital o instrumental, **por más leve que sea**; y (3) el elemento subjetivo en la comisión del delito imputado, -- es decir, que el mismo se efectuó a propósito, con conocimiento o temerariamente --.

Ahora bien ¿cuándo ocurre esa penetración por más leve que sea? ¿es necesario que se trate de una penetración total dentro de la cavidad vaginal de la víctima? Al respecto, basta con señalar que el traspaso más mínimo de la superficie vaginal (lo que vendría siendo los labios

exteriores del órgano reproductor femenino) es suficiente para constituir la penetración tipificada en el delito de incesto. En ese sentido, nos resulta sumamente persuasiva cierta sentencia dictada por el Tribunal Supremo de España el 27 de mayo de 2021.

En dicho caso, -- uno que involucraba una agresión sexual vaginal cometida digitalmente --, el referido Tribunal contestó a la pregunta de "¿hasta dónde debe producirse la introducción [digital] para ser considerada penetración?" sosteniendo que habría una penetración "ante el contacto de acceso a la zona interna vaginal por leve que este sea, ya que no se puede exigir un 'acceso total', bastando el acceso a la zona interna sexual femenina". STS, 454/2021 27 mayo 2021.[3]

---

[3] El Tribunal Supremo de España en su ilustre sentencia añade que "todo lo que sea un exceso, por leve o breve que sea, de superación de la 'horizontalidad' en la zona sexual femenina supone la existencia de agresión sexual […], por considerar que hubo penetración, sin poder exigirse que sea un acceso total y absoluto". STS 454/2021 27 mayo 2021. De igual manera, y sobre el significado de "horizontalidad" del órgano reproductor femenino, el alto foro español sostiene que "debe entenderse por 'horizontalidad' la zona superficial referida al mero tocamiento externo, suponiendo la superación de la barrera de la horizontalidad, por leve que sea ese acceso o contacto, una penetración. No se puede exigir, por ello, ni más ni menos, sino el 'acceso suficiente' para entender que ya se irrumpe en la zona sexual de la mujer por leve que sea el contacto o acceso". *Íd.*

De igual modo, otras jurisdicciones estatales de los Estados Unidos han llegado a la misma conclusión. Así, por ejemplo, la Corte de Apelaciones del estado de Georgia, ha concluido que la más ligera penetración, incluyendo la entrada a la zona anterior a la cavidad vaginal es suficiente para probar el elemento esencial de penetración en el delito de incesto. *Raymond v. State*, 232 Ga. App. 228, 229 (1998) ("*We believe that slight penetration, including entry of the anterior of the organ, is sufficient to meet the intercourse element of the incest statute*"). Por su parte, la Corte de Apelaciones del estado de Indiana ha resuelto que, para probar el elemento de penetración en el delito de incesto, no es necesaria la penetración de la vagina, sino que basta con que el órgano sexual femenino sea traspasado. *Winters v. State*, 727 N.E. 2d. 758, 760 (Ind. Ct. App. 2000) ("*Indiana law does*

III.

Establecido lo anterior, precisa señalar aquí que, de conformidad con lo dispuesto en la Constitución del Estado Libre Asociado de Puerto Rico, "en todos los procesos criminales, el acusado disfrutará del derecho […] a gozar de la presunción de inocencia". Art. II, Sec. 11, LPRA Tomo 1, ed. 2023, pág. 359. Es por ello que, en lo relativo a los procesos judiciales penales, suele decirse que el Estado es quien tiene el peso de la prueba. *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018); *Pueblo v. Irizarry Irizarry*, 156 DPR 780, 787 (2002); *In re Winship*, 397 U.S. 358, 364 (1970).

Para rebatir la presunción de inocencia, la prueba que presente el Ministerio Público debe ser una que satisfaga el estándar probatorio máximo en nuestro ordenamiento jurídico. Es decir, la prueba presentada por el Estado debe ser una que demuestre la comisión de los hechos imputados más allá de duda razonable. Véase, *Regla 110(f) de Evidencia de Puerto Rico,* 32 LPRA Ap. VI; *Pueblo v. De León Martínez*, 132 DPR 746, 764 (1993); *In re Winship*, *supra*, pág. 364. Específicamente, en otras ocasiones hemos mencionado que la prueba suficiente para derrotar la presunción de inocencia que cobija a un acusado es aquella que permite hallar a un ciudadano culpable de la comisión de un delito al probar, más allá de duda razonable, todos los elementos del delito

---

*not require that the vagina be penetrated, only that the female sex organ be penetrated"*).

y la conexión del acusado con éstos. *Pueblo v. Toro Martínez*, *supra*, págs. 855-856; *Pueblo v. Colón Castillo*, 140 DPR 564, 581 (1996); *Pueblo en el interés del menor F.S.C.*, *supra*, pág. 941.

La prueba así presentada, sin embargo, no supone la necesidad u obligación de probar la comisión del delito con certeza matemática. *Pueblo v. Toro Martínez*, *supra*, pág. 856; *Pueblo v. Maisonave Rodríguez*, 129 DPR 49, 71 (1991); *Pueblo v. Bigio Pastrana*, 116 DPR 748, 761 (1985). **Lo que se exige, como imperativo constitucional, es "prueba satisfactoria y suficiente en derecho […] que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido".** (Énfasis nuestro). *Pueblo v. Toro Martínez*, *supra*, pág. 856. Así pues, para derrotar la presunción de inocencia y probar la comisión de un delito más allá de duda razonable, no se requiere que toda duda posible tenga que ser destruida, sino que se derrote la duda razonable, la que vendría siendo aquella duda fundada en el raciocinio de todos los elementos de juicio envueltos en el caso y que no constituye una duda especulativa o imaginaria. *Pueblo v. García Colón I*, 182 DPR 129, 175 (2011); *Pueblo v. Bigio Pastrana*, *supra*, págs. 760-761; *Pueblo v. Gagot Mangual*, 96 DPR 625, 627 (1968).

Por otro lado, y como ya habíamos mencionado, la prueba presentada por el Ministerio Público debe probar todos los elementos del delito y la conexión del imputado con el

referido delito. Por ello, la carencia de prueba sobre alguno de los elementos del delito implicaría el incumplimiento por parte del Estado con su carga probatoria y supondría la absolución del acusado respecto al delito imputado.

Esta determinación, de si se satisfizo el estándar probatorio correspondiente, -- y, por ende, si se probó la culpabilidad del acusado más allá de duda razonable--, es una que corresponde inicialmente al juzgador de hechos, quien vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos. Regla 110 de Evidencia, *supra*. Véase, *Pueblo v. Toro Martínez*, *supra*, pág. 858; *Pueblo v. Acevedo Estrada*, 150 DPR 84, 98 (2000); *Pueblo v. Torres Rivera*, 137 DPR 630, 641 (1994). En casos criminales con derecho a juicio por Jurado, esta función le corresponde al Jurado, el cual está constitucionalmente encomendado a recibir la prueba, adjudicar los hechos en base a ésta y aplicar el derecho según le instruya el tribunal. *Pueblo v. Santa Vélez*, 177 DPR 61, 65-66 (2009); *Pueblo v. Negrón Ayala*, 171 DPR 406, 414 (2007). Véase, E. Chiesa Aponte, *Procedimiento Criminal y la Constitución: etapa adjudicativa*, San Juan, Ediciones Situm, 2018, pág. 490.

Conforme a ello, si en virtud de la prueba presentada por el Ministerio Público, el juzgador de hechos estima que se han probado más allá de duda razonable todos los elementos

del delito y la conexión de éstos con el acusado, la obligación del juzgador es encontrar al acusado culpable del delito imputado. Ahora bien, el acusado que así fuere convicto tendrá el derecho de apelar su convicción ante un tribunal de superior jerarquía, el cual podrá pasar juicio sobre la determinación de culpabilidad hecha por el Tribunal de Primera Instancia. Regla 193 de Procedimiento Criminal, 34 LPRA Ap. II. Esto debido a que, como hemos intimado en el pasado, la apreciación que hace un juzgador de la evidencia desfilada durante un juicio criminal y la eventual determinación de culpabilidad, son una cuestión mixta de hecho y de derecho que es revisable en apelación por un tribunal de mayor jerarquía. *Pueblo v. Cabán Torres*, 117 DPR 645, 653 (1986); *Pueblo v. Pagán Díaz*, 111 DPR 608, 621 (1981); *Pueblo v. Serrano Nieves*, 93 DPR 56, 60 (1966).

Sin embargo, esta facultad no constituye una carta blanca para que los tribunales apelativos revoquemos, sin más, los fallos o veredictos emitidos por un tribunal de instancia. Esto, debido a que, como exponemos a continuación, en nuestro ordenamiento jurídico impera una norma general de deferencia a la apreciación de la prueba y las determinaciones de hechos que realiza el foro juzgador, y solo reconoce contadas excepciones en las que un tribunal apelativo podrá intervenir con éstas y sustituir el criterio del foro primario por el suyo. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. Santiago Collazo y otros*,

*supra*, págs. 144-148; *Pueblo v. Irizarry Irizarry*, 156 DPR 780, 815 (2002).

IV.

Sobre esto último, en el pasado hemos expresado que cuando se cuestiona la suficiencia de la evidencia presentada en un juicio y se destaca -- con miras a obtener la revocación de una convicción -- que el foro primario erró en su apreciación y aquilatamiento de la prueba, "el alcance de nuestra función revisora está limitado por consideraciones de extrema valía". *Pueblo v. Toro Martínez*, *supra,* pág. 857. Dicho precepto, surge del principio cardinal de la revisión apelativa en cuanto a la deferencia que se ha de dar a las determinaciones de hechos realizadas por el Tribunal de Primera Instancia. Así, hemos manifestado que "nuestro esquema probatorio está revestido por un manto de deferencia hacia las determinaciones que realizan los juzgadores de primera instancia en cuanto a la prueba testifical que se presenta ante ellos". *Pueblo v. Arlequín Vélez*, 204 DPR 117, 146-147 (2020) (citando a *Pueblo v. Toro Martínez, supra*, pág. 857).

Dicha deferencia emana del hecho de que los juzgadores de instancia se encuentran en una mejor posición para evaluar, aquilatar y adjudicar la prueba presentada ante ellos. *Pueblo v. Toro Martínez*, *supra*, págs. 857-858; *Pueblo v. García Colón I*, 182 DPR 129, 165 (2011); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). **Esto cobra mayor vigencia**

**cuando se trata de la prueba testifical (oral) desfilada en el juicio**. Después de todo, son los juzgadores de hechos los que pueden oír y apreciar la forma de declarar de los testigos, así como su comportamiento. *Pueblo v. Toro Martínez*, *supra*, pág. 858; *Pueblo v. García Colón I*, *supra*, pág. 165; *Pueblo v. Maisonave Rodríguez*, *supra*, págs. 62-63.

Al respecto, cabe destacar que, si bien la "suficiencia de la prueba" es algo que no debe confundirse con la "apreciación de la prueba" que realiza el juzgador de hechos, lo cierto es que muchas veces el planteamiento sobre insuficiencia de la prueba es uno que se reduce a la credibilidad que se le da a los testigos y a la apreciación que hace el juzgador de instancia sobre la prueba desfilada ante sí. E. Rivera García, *El juez constitucional del siglo XXI: reflexiones sobre los criterios de revisión judicial*, 4 P.R. Law. Ass'n. L. Rev. 67, 77-79 (2019). Véase, *Pueblo v. Toro Martínez*, *supra*, pág. 857. Conforme a ello, podemos decir que esto se debe a que el planteamiento de insuficiencia de prueba suele usarse para atacar, precisamente, la valorización que hace el juzgador de hechos de la prueba que se le presenta. A esos fines, hemos expresado que cuando los planteamientos sobre insuficiencia de prueba se reducen a uno de credibilidad de testigos (apreciación de la prueba), también seremos deferentes con los foros de instancia. *Pueblo v. Toro Martínez*, *supra*, pág.

857; *Pueblo v. Torres Rivera*, 137 DPR 630, 640-641 (1994);
*Pueblo v. Hernández Mercado*, 126 DPR 427, 446 (1990).[4]

Cónsono con lo anterior, este Tribunal ha manifestado que la deferencia debida a los foros de instancia se extiende tanto a la adjudicación de credibilidad que éstos realizan sobre los testigos que declaran ante sí, como a las determinaciones de hechos realizadas por el juzgador. *Pueblo v. Toro Martínez, supra*, pág. 858; *Trinidad v. Chade*, 153 DPR 280, 291 (2001); *Pueblo v. Torres Rivera*, 137 DPR 630, 640-641 (1994). Como excepción a este principio de deferencia, es norma conocida que, en cuanto a la apreciación de la prueba documental que se haya presentado en un juicio, los foros apelativos estamos en las mismas condiciones que el tribunal de instancia para intervenir y apreciar *de novo* dicha prueba. *Díaz García v. Aponte Aponte*, 125 DPR 1, 13 (1989); *Ramírez, Segal & Latimer v. Rojo Rigual*, 123 DPR 161, 166 esc. 1 (1989); *Ortiz v. Cruz Pabón, supra*, pág. 947.

---

[4] La diferencia esencial entre planteamientos de "insuficiencia de prueba" y "apreciación de la prueba" estriba en que, en el primer escenario, el tribunal apelativo solo viene llamado a considerar si, ante la totalidad de la prueba correctamente admitida en corte, ésta fue suficiente para satisfacer el estándar probatorio correspondiente. En estos casos, al tratarse de una cuestión de suficiencia, el tribunal revisor estará en una posición más apta para intervenir con la determinación del foro inferior. Por otro lado, ante planteamientos de "apreciación de la prueba", lo que se cuestiona es el aquilatamiento de la prueba que hubiera hecho el juzgador de hechos. En dichos casos, los foros apelativos vienen obligados a ser deferentes a las determinaciones realizadas por el foro de instancia y solo intervendrán cuando estén presentes las excepciones reconocidas por el ordenamiento jurídico. Véase, E. Rivera García, *El juez constitucional del siglo XXI: reflexiones sobre los criterios de revisión judicial*, 4 P.R. Ass'n. L. Rev. 67, 77-78 (2019).

Sin embargo, y como ya habíamos adelantado, cuando en una apelación una parte cuestiona la validez de un fallo o veredicto contrario a sus intereses, aludiendo a que el juzgador de hechos erró en su apreciación de la prueba testifical presentada en el juicio, es norma harta conocida que, de ordinario, un tribunal apelativo no intervendrá con dichas determinaciones, a no ser que el foro sentenciador haya incurrido en pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Pueblo v. Toro Martínez*, *supra*, pág. 858; *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002). A esos fines, este Tribunal ha definido el concepto de "pasión, prejuicio y parcialidad" como aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 779 (2022); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 374 (2020); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

Por otro lado, en cuanto al significado de "error manifiesto", hemos expresado que un juzgador incurre en semejante error y en una determinación claramente errónea si, aun habiendo alguna prueba que sostenga las

**determinaciones de hechos del tribunal, el foro revisor razona que se cometió un error, "como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida"**. (Énfasis nuestro). *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 772. Esto, luego del correspondiente análisis de la totalidad de la evidencia presentada en corte. *Íd.*

Asimismo, en *Pueblo v. Santiago Collazo et als.*, 176 DPR 133, 147-148 (2009), sostuvimos que, además de la consabida norma de deferencia, salvo la presencia de prejuicio, parcialidad o pasión en la determinación del foro primario, un tribunal apelativo podrá revocar la determinación de culpabilidad realizada por un juzgador de hechos si "la prueba no concuerda con la realidad fáctica, es increíble o es imposible". Véase*,* además, *Pueblo v. Arlequín Vélez*, *supra*, pág. 148.

Por último, un tribunal apelativo también podrá intervenir con las determinaciones de hechos y apreciación de la prueba que realice el juzgador de primera instancia si se demuestra que éste incurrió en un abuso de discreción al apreciar y adjudicar la prueba presentada ante sí. *Pueblo v. Rivera Montalvo*, *supra*, pág. 373; *Pueblo v. Soto Molina*, 191 DPR 209, 227 (2014); *Pueblo v. Ortega Santiago*, 125 DPR 203, 212 (1990). A tales efectos, hemos manifestado que se incurre en abuso de discreción cuando,

el juez: (1) ignora sin fundamento algún hecho material importante que no podía pasar por alto; (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 374 (2020).

Cónsono con lo anterior, un tribunal apelativo incurre también en abuso de discreción si sustituye el criterio de apreciación de la prueba realizado por el juzgador de hechos en el foro de instancia, o las determinaciones de hechos realizadas por éste, sin haber mediado prejuicio, parcialidad, pasión o error manifiesto.

**Cabe destacar que esta norma de deferencia apelativa es aplicable con igual rigor cuando lo que se tiene ante consideración del foro revisor es un veredicto de culpabilidad emitido por un Jurado.** *Pueblo v. Colón Castillo*, 140 DPR 564, 580 (1996); *Pueblo v. Rivera Robles*, 121 DPR 858, 869-870 (1988); *Pueblo v. Cabán Torres*, *supra*, págs. 653-654. Es decir, los foros apelativos venimos obligados a prestar deferencia a las determinaciones de hechos y a la apreciación de la prueba que haga, ya sea un juez o un panel de jurados. Nada en nuestro ordenamiento nos impone, ni nos permite, proceder de manera distinta ante la revisión de un fallo o un veredicto de culpabilidad.

Después de todo, el juzgador de hechos, ya sea un juez o un panel de jurados, es quien tiene el privilegio de oír la prueba testifical presentada ante sí y evaluar el comportamiento de los declarantes. La importancia de ello,

por tanto, radica en que, como hemos dicho en el pasado, durante el testimonio de los testigos,

> no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, **los movimientos**, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, **todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación.** (Énfasis nuestro). *Ortiz v. Cruz Pabón*, 103 DPR 939, 947 (1975).

Es, pues, a la luz del derecho reseñado, que procedemos a disponer de la causa de epígrafe.

V.

En el presente caso, como ya mencionamos, el señor Negrón Ramírez fue encontrado culpable de todos los delitos que le fueron imputados, -- entiéndase, los delitos de actos lascivos, maltrato de menores e incesto --, mediante un veredicto unánime del Jurado. Luego de haber sido sentenciado, la defensa del convicto apeló la determinación del Jurado, aduciendo, entre otros argumentos, que el Ministerio Público no probó más allá de duda razonable todos los elementos del delito de incesto.

Específicamente, la defensa del señor Negrón Ramírez arguyó ante el Tribunal de Apelaciones que el juzgador de hechos incurrió en error al rendir un veredicto de culpabilidad por el delito de incesto, cuando, según

planteó, hubo ausencia de prueba sobre el elemento de penetración. Sobre este particular, la defensa alegó que del testimonio de la menor TIRN, -- víctima del referido delito --, no surgía prueba que demostrara, más allá de duda razonable, algún tipo de penetración vaginal digital, según aducido por el Ministerio Público. Esto, aun cuando un Jurado, de forma unánime, encontró probada la comisión del referido delito.

Así las cosas, el foro apelativo intermedio acogió el planteamiento de la defensa y revocó la convicción por el mencionado delito. El Tribunal de Apelaciones razonó que el Jurado incurrió en error manifiesto al encontrar culpable al señor Negrón Ramírez por el delito de incesto, cuando, a su entender, de la transcripción examinada surgía que existía ausencia de prueba sobre el elemento de penetración.

A raíz de ello, el Estado, representado por el Procurador General, comparece ante nos y nos solicita que revoquemos la determinación del Tribunal de Apelaciones y reinstalemos el dictamen del Tribunal de Primera Instancia, por entender que el foro apelativo intermedio abusó de su discreción. Le asiste la razón. Para llegar a dicha conclusión basta con examinar el testimonio de la menor TIRN, sobrina del señor Negrón Ramírez y víctima del delito en cuestión.

A esos fines, la menor TIRN testificó que los hechos que dieron margen al presente proceso criminal ocurrieron

allá para principios del año 2016, cuando ésta tenía alrededor de once (11) años de edad. De la transcripción de su testimonio surge que el día de los hechos, ésta se encontraba en casa de sus abuelos, en la cual también residía su tío, el acusado señor Negrón Ramírez. Allí, el señor Negrón Ramírez la llamó para que fuera a su habitación bajo el pretexto de que le entregaría unos dulces. Una vez estando dentro del cuarto, la menor TIRN se colocó de pie frente a la cama de su tío, recibió los dulces y procedió a comérselos.

Sin embargo, mientras la menor ingería los dulces ofrecidos por su tío, el señor Negrón Ramírez procedió a tocarle y acariciarle los muslos. Dichos movimientos continuaron hasta que el acusado desplazó su mano hasta los genitales de su sobrina y los manoseó. Al llegar a este momento durante su testimonio, la menor TIRN manifestó no recordar ciertos aspectos de lo ocurrido ese día, por lo que se le presentó una declaración jurada prestada por ella misma, según lo permite la Regla 613 de las de Evidencia, *supra*,[5] para que pudiera leerla y refrescar su memoria.

---

[5] La referida regla 613, *supra*, dispone que "(A) [s]ujeto a lo dispuesto en el inciso (C) de esta Regla, si durante su testimonio o con anterioridad al mismo, una persona testigo utilizare un escrito para refrescar su memoria sobre cualquier asunto objeto de su testimonio, será necesario presentar en la vista dicho escrito a solicitud de cualquier parte adversa. De no presentarse el escrito, se ordenará la eliminación del testimonio de la persona testigo sobre dicho asunto. (B) Si se presenta dicho escrito en la vista, la parte adversa puede inspeccionarlo, contrainterrogar a la persona testigo sobre tal escrito y presentar como prueba cualesquiera de sus partes que sean pertinentes. (C) Se eximirá la presentación del escrito en el juicio, y el testimonio del testigo no será eliminado, si dicho escrito: (1) No está en posesión o bajo control de la persona testigo o de la parte que ofreció su testimonio sobre el particular. (2) No era razonablemente asequible a

Refrescado su recuerdo sobre lo ocurrido el día de los hechos, la menor TIRN testificó lo siguiente:

> **FISCAL:** luego de, de leer su declaración jurada, verdad y refrescar su memoria, dígale a las damas y caballeros del jurado qué sucedió allí [en el cuarto del señor Negrón Ramírez] mientras su tío le estaba tocando su área de su vagina.
>
> **TESTIGO:** pues, él, eh, él, hubo momentos…
>
> **FISCAL:** ajá.
>
> **TESTIGO:** …que él, eh, bajó mis pantalones…
>
> **FISCAL:** Mjm.
>
> **TESTIGO:** …y me empezó a, a acariciarme la vagina otra vez.
>
> **FISCAL:** Ok, dile a las damas y caballeros del jurado, este, cómo te acariciaba entonces, la vagina cuando usted dice que le baja los pantalones.
>
> **TESTIGO:** Él, sobándola, él me acariciaba, ehm, hacia los lados, o hacia arriba y hacia abajo.
>
> **FISCAL:** hacia arriba y hacia abajo ¿con que?
>
> **TESTIGO:** eh, con sus dedos.
>
> **FISCAL:** con sus dedos. Y cuando usted dice hacia arriba y hacia abajo ¿hacia arriba y hacia abajo dónde?
>
> **TESTIGO:** en mi vagina.
>
> **FISCAL:** Ok, eh y dígale a las damas y caballeros del jurado, este, si eso era por encima o por debajo de la ropa.
>
> **TESTIGO:** eh, por debajo.
>
> **FISCAL:** Por debajo, y cuando su, usted dice por debajo de la ropa ¿a qué se refiere?
>
> **TESTIGO:** eh, por debajo de, de mi ropa interior.
>
> **FISCAL:** Ok, por debajo de tu ropa interior, ok. Entonces, eh ¿qué era lo que hacía entonces Efrén con el dedo en tu área de tu vagina?

---

dicha parte mediante el uso de las órdenes para la presentación de prueba documental o por cualquier otro medio disponible. (3) Sólo es utilizado para refrescar la memoria antes de testificar en el juicio, y en su discreción, el Tribunal estima que es innecesario requerir su presentación".

**TESTIGO:** Pues él solo lo mo, lo movía por los lados, en, por la superficie.[6]

Más adelante, y luego del testimonio antes citado, el fiscal a cargo del examen directo solicitó a la menor TIRN que hiciera una demostración de los movimientos que hacía el señor Negrón Ramírez en el área genital de ésta. Según la transcripción del juicio se dijo lo siguiente:

**FISCAL:** […] Y descríbele a las damas y caballeros del jurado, verdad, usted dijo que lo movía hacia arriba y hacia abajo el dedo ¿cómo era que hacía ese movimiento? Si lo puede describir con la mano.
. . .
**FISCAL:** si puede hacer el movimiento, testigo, cuando usted dice que, que movía su dedo hacia arriba y hacia abajo, en su vagina, si puede hacer el movimiento para que las damas y caballeros del jurado puedan observar. Con su mano.

**TESTIGO:** él, él "ininteligible" …

**FISCAL:** ¿Cómo?

**TESTIGO:** Que él, él hacía como así, como, como así.

**FISCAL:** Ok, ¿y hacia arriba hacia dónde era que él movía su dedo?

**TESTIGO:** En mi área privada.[7]

Presentado el anterior testimonio ante el tribunal, así como la demostración y gesticulación antes descrita que realizara la testigo, los doce miembros del Jurado encontraron culpable al señor Negrón Ramírez de todos los delitos imputados, incluyendo el del incesto.

A tales efectos, puede concluirse que, a base de la prueba desfilada, **-- tanto la oral como los gestos**

---

[6] *Véase*, *Transcripción de prueba oral de oficio*, Anejo XII de la *Petición de certiorari*, págs. 293-294.

[7] Véase, *Transcripción de prueba oral de oficio*, Anejo XII de la *Petición de certiorari*, págs. 294-295.

**realizados por la testigo y víctima del delito --**, el juzgador de hechos, en este caso el Jurado, determinó que en el caso de autos el señor Negrón Ramírez penetró digitalmente la vagina de su sobrina y, por ende, lo encontró culpable del delito de incesto.[8] Al proceder de este modo, el Jurado concluyó que la prueba presentada por el Ministerio Público probó más allá de duda razonable todos los elementos del delito imputado, así como la conexión del imputado con dicho delito.[9]

Según ya hemos mencionado, como norma general un tribunal apelativo no intervendrá con las determinaciones de hechos y la apreciación de la prueba que haga el Tribunal de Primera Instancia a no ser que éste haya incurrido en prejuicio, parcialidad, pasión o error manifiesto. En este caso, no están presentes ningunas de las excepciones ya mencionadas, en consecuencia, el Tribunal de Apelaciones no debió intervenir y no lo haremos nosotros.

---

[8] Es decir, los gestos ilustrativos realizados por la menor demostraron a satisfacción del Jurado que los contactos que le realizó el señor Negrón Ramírez constituyeron una penetración, aunque leve y ligera, a su zona vaginal.

[9] Si bien la presente controversia es una de apreciación de la prueba, nos resulta curioso el que a pesar de que en sus escritos apelativos la defensa del señor Negrón Ramírez sostuviera que el caso ante nos es uno de suficiencia de la prueba, ésta no solicitara, al finalizar el juicio, una moción de absolución perentoria según lo permite la Regla 135 de las de Procedimiento Criminal, 32 LPRA Ap. II. De igual manera, resulta llamativo el que el juez del Tribunal de Primera Instancia que presidió el juicio por Jurado tampoco haya, a instancia propia como permite la referida regla, decretado la absolución perentoria del acusado si entendía que la prueba presentada por el Ministerio Público era insuficiente. No tenemos duda de que ello no ocurrió debido a que la prueba desfilada en corte, -- y particularmente las demostraciones no verbales de la testigo --, fue suficiente para probar el delito de incesto imputado.

Así, pues como hemos expresado en el pasado "los juzgadores de hechos nos merecen respeto y confiabilidad en la apreciación imparcial de la prueba". *Pueblo v. Carrasquillo Carrasquillo*, 102 DPR 545, 551 (1974). Después de todo, -- y según mencionamos anteriormente, y repetimos ahora --, respecto a la mejor posición en la que se encuentran los foros de instancia para apreciar y aquilatar la prueba desfilada ante sí:

> [E]s que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, **los movimientos**, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, **todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación.** (Énfasis nuestro). *Ortiz v. Cruz Pabón*, *supra*, pág. 947.

De eso, precisamente, trata este caso. De determinaciones basadas en los movimientos, gestos y demostraciones no verbales que hizo la testigo en corte y que fueron observados, correctamente apreciados y creídos por el juzgador de hechos.[10] Dicha prueba, en lo que respecta

---

[10] Al respecto, este Tribunal ha expresado que "la regla de deferencia hacia los juzgadores de instancia cobra mayor significado en casos de esta naturaleza [(delitos sexuales)], en que la forma de hablar, comportamiento, **explicaciones, gestos, ademanes y demás detalles perceptibles resultan esenciales para aquilatar adecuadamente la sinceridad de los testimonios**". (Énfasis nuestro). *Pueblo v. Rivera Robles*, *supra*, pág. 869. Tal es el escenario ante el cual nos encontramos en el presente caso y, según ya hemos manifestado, no existe

a este caso, es suficiente para sostener el veredicto de culpabilidad por el delito de incesto. No nos convencen los argumentos del señor Negrón Ramírez.[11] Se cometió, pues, el error señalado.

## VI.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones en lo que respecta a la revocación que hiciera dicho tribunal sobre la convicción por el delito de incesto. En consecuencia, se reinstala la totalidad de la sentencia emitida por el Tribunal de Primera Instancia, Sala de Ponce, mediante la cual se encontró culpable al señor Negrón Ramírez de todos los delitos imputados.[12]

---

razón jurídica para intervenir con la determinación que en su día realizó el Jurado.

[11] En su comparecencia ante nos, la defensa del señor Negrón Ramírez enfatiza las múltiples ocasiones en las que la menor TIRN mencionó no recordar los eventos sobre los cuales testificaba; el hecho de que le tuvieron que refrescar la memoria conforme lo permiten las Reglas de Evidencia; y el que ésta manifestara que ciertas partes de su declaración jurada eran falsas y contradictorias. Sin embargo, hemos expresado que la naturaleza de los delitos cometidos, así como la edad de los testigos, la escolaridad, y el trauma que puedan haber sufrido como parte de la comisión del delito sobre sus personas, son factores que no pueden ser pasados por alto a la hora de estimar la credibilidad de los testigos. *Pueblo v. Rivera Robles*, *supra*, pág. 865. Además, "después de todo, los seres humanos tenemos la natural tendencia a olvidar lo penoso, desagradable y traumático". *Íd.*, pág. 864. Por tanto, estimamos que la apreciación que realizó el Jurado fue correcta.

[12] En su *Alegato* la defensa del señor Negrón Ramírez alega, basado en lo resuelto por este Tribunal en *Pueblo v. Martínez Torres*, 126 DPR 561 (1990), que como el Tribunal de Apelaciones revocó la convicción por el delito de incesto bajo el fundamento de insuficiencia de la prueba, el recurrido está protegido contra ulterior convicción por el referido delito bajo la protección constitucional contra la doble exposición. Por tanto, aduce que este Tribunal no podría, constitucionalmente hablando, reinstalar la convicción revocada. **No le asiste la razón.**

Como bien es sabido nuestra Carta Magna establece que en el Estado Libre Asociado de Puerto Rico "nadie será puesto en riesgo de ser castigado dos veces por el mismo delito". Art. II, sec. 11, Const. ELA,

Se dictará *Sentencia* de conformidad.


                                        Ángel Colón Pérez
                                        Juez Asociado

---

LPRA, Tomo 1. Dicha protección constitucional ofrece a un acusado cuatro distintas protecciones, a saber, protecciones contra: (1) ulterior exposición tras absolución por la misma ofensa; (2) ulterior exposición tras convicción por la misma ofensa; (3) ulterior exposición tras exposición anterior por la misma ofensa; y (4) castigos múltiples por la misma ofensa. *Pueblo v. Torres* Irizarry, 199 DPR 11, 20 (2017); *Pueblo v. Santos Santos*, 189 DPR 361, 367-368 (2013); E. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, *op. cit.*, pág. 570.

Sin embargo, si bien es cierto que tras la revocación de una convicción por insuficiencia de prueba lo que corresponde es la absolución del acusado y la prohibición de ulteriores procedimientos **en primera instancia** sobre el referido delito, "no hay impedimento para que el gobierno recurra a un tribunal apelativo de superior jerarquía para que se revoque la determinación del tribunal apelativo inferior de que en el juicio hubo insuficiencia de prueba". E. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, *op. cit.*, pág. 612. Véase*,* además, *Pueblo v. Toro Martínez*, *supra*; *Pueblo v. Santos Santos*, 189 DPR 361 (2013).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.                     CC-2023-0210    *Certiorari*

Efrén A. Negrón Ramírez

    Recurrido

SENTENCIA

En San Juan, Puerto Rico a 23 de abril de 2024.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones en lo que respecta a la revocación que hiciera dicho tribunal sobre la convicción por el delito de incesto. En consecuencia, se reinstala la totalidad de la sentencia emitida por el Tribunal de Primera Instancia, Sala de Ponce, mediante la cual se encontró culpable al señor Negrón Ramírez de todos los delitos imputados.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de Conformidad a la que se une el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Estrella Martínez hace constar la siguiente expresión de conformidad:

> Estoy conforme con la *Opinión mayoritaria* emitida por este Tribunal. Además, estoy conforme en que se haya rechazado una interpretación que sería lesiva a la vindicación de los derechos de las víctimas de delitos sexuales. Me explico.
>
> De entrada, el testimonio de la víctima estuvo sustentado con movimientos, gestos y demostraciones no verbales que fueron vistos, apreciados y creídos por el panel de jurado.

El análisis de la prueba contenido en la *Opinión mayoritaria* revela sin ambages que no existen las circunstancias excepcionales para que un foro apelativo sustituya la apreciación de la prueba del foro de primera instancia. En efecto, abusó de su discreción el Tribunal de Apelaciones al no otorgarle deferencia a la apreciación del **testimonio y la gesticulación** que realizó la menor TIRN durante su examen directo, gestos que fueron observados y evaluados por los doce (12) miembros del jurado, quienes luego de las debidas instrucciones, determinaron que se demostró más allá de duda razonable el elemento esencial de la penetración. Y es que por la naturaleza del récord que se guarda de los procedimientos, el foro apelativo intermedio no observó ni evaluó los ademanes y movimientos con los que TIRN describió las acciones del recurrido que dieron base al elemento de penetración digital vaginal. Por lo tanto, el Tribunal de Apelaciones no debió revocar la convicción basado en la lectura inanimada de la transcripción y una interpretación errada del Derecho.

No menos importante, el resolver aquí lo contrario conllevaría un análisis interpretativo limitante de los derechos de las personas víctimas de delitos de esta naturaleza. No debemos dejar fuera de nuestro análisis que el propio Art. 132 del Código Penal dispone, en lo pertinente, que el delito de incesto consiste esencialmente en la **agresión inferida a la integridad física, síquica o emocional y a la dignidad de la persona** y que **cualquier acto de penetración sexual** (genital, **digital** o instrumental, **por leve que sea, bastará para consumar el delito.** (Negrillas suplidas). 33 LPRA sec. 5193. En ese sentido, enfatizo que en el caso que nos ocupa, la víctima explicó con su testimonio y con su gesticulación la manipulación en su área genital que realizó el aquí recurrido y que dio paso a su convicción.

En consecuencia, sostengo que el análisis mayoritario fortalece los derechos de las víctimas de delitos sexuales, rechaza nociones y razonamientos que harían mucho más cuesta arriba su vindicación y que no nos permitirían avanzar como sociedad. Véase, *Sentencia del Tribunal Supremo de España (Sala de lo Penal) de 27 de mayo de 2021 [Roj: sts 2140/2021].*

La Jueza Asociada señora Pabón Charneo concurre sin opinión escrita. El Juez Asociado señor Martínez Torres emitió una Opinión disidente.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

El Pueblo de Puerto Rico

    Peticionario

      v.                 CC-2023-0210

Efrén A. Negrón Ramírez

    Recurrido

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de conformidad a la cual se unió el Juez Asociado señor Estrella Martínez.

En San Juan, Puerto Rico, a 23 de abril de 2024.

Estoy conforme con la determinación que emitimos durante el día de hoy. El ministerio de la Judicatura es la impartición de la justicia. Por ello, el manejo de todo caso requiere rigor para garantizar el ejercicio pleno de los derechos de las partes. No obstante, al analizar y aplicar la Ley, estamos llamados a estar atentos y atentas a las particularidades y necesidades de cada situación de hechos. Tener una perspectiva amplia y humanista no está reñida con los parámetros de adjudicación que rigen nuestro estado de derecho penal.

En ese sentido, es imprescindible que nuestro ejercicio adjudicativo no se abstraiga de la realidad singular de este caso y se dote de sensibilidad para

la comprensión cabal de la controversia. Ante esto, considero pertinente destacar y contextualizar las circunstancias a las cuales se enfrentó la víctima para así entender la prueba vertida que convenció a un Jurado de la comisión del delito de incesto.

**I**

En primer lugar, es errado aseverar que no se desfiló prueba sobre el elemento esencial de penetración del delito de incesto. El derecho vigente, validado por la determinación que emite hoy este Tribunal, establece que **cualquier acto** orogenital **o penetración sexual**, **vaginal** o anal, ya sea ésta genital, **digital** o instrumental, **por leve que sea**, **bastará para consumar el delito de agresión sexual o de incesto.**[1] **Del testimonio de la menor TIRN surge de manera explícita que el señor Negrón Ramírez le quitó su prenda íntima y la "[sobó y acarició] hacia los lados, o hacia arriba y hacia abajo [en la vagina]".**[2] Resulta preocupante, pues, que la Opinión disidente indique que "en ninguna parte del expediente se mencionan, describen o ejemplifican" movimientos constitutivos del elemento de penetración.[3] Revisitemos el testimonio de la menor TIRN:

> **Fiscal:** Ok, dile a las damas y caballeros del jurado, este, cómo te acariciaba entonces, la vagina cuando usted dice que le baja los pantalones.
>
> **Testigo:** Él, sobándola, él me acariciaba, ehm, **hacia los lados, o hacia arriba y hacia abajo.**

---

[1] Véase Art. 132 de la Ley Núm. 146-2012, 33 LPRA sec. 5193.
[2] Véase Opinión mayoritaria, pág. 25.
[3] Véase Opinión disidente, pág. 22.

> **Fiscal:** [H]acia arriba y hacia abajo ¿con qué?

> **Testigo:** Eh, con sus **dedos.**

> **Fiscal:** Con sus **dedos,** y cuando usted dice hacia arriba y hacia abajo ¿hacia arriba y hacia abajo dónde?

> **Testigo: En mi vagina.** (Negrilla suplida).[4]

El referido testimonio, creído por un Jurado, evidencia inequívocamente que el señor Negrón Ramírez penetró de manera digital a la menor TIRN. En esta tesitura, es meritorio aclarar que el testimonio de roce superficial no merma el valor del testimonio sobre la penetración. Esto solamente es indicativo de la extensión de la agresión sufrida. De este modo, el acto descrito constituye la circunstancia esencial que exige nuestro Código Penal para configurar la "agresión inferida a la integridad física, síquica o emocional y a la dignidad de la persona".[5] A este testimonio verbal se le suman los gestos realizados por la menor ante el Jurado. Así, contrario a lo que pretende establecer la Opinión disidente, no estamos ante un caso de insuficiencia de la prueba.

## II

En segundo lugar, es inexacto calificar la determinación de la Opinión mayoritaria como una que refrenda la violación de los derechos de las personas acusadas. Vindicar la dignidad de las víctimas no es incompatible con la defensa de los derechos de las personas

---

[4] Véase Opinión mayoritaria, pág. 25.
[5] Véase 33 LPRA sec. 5193.

acusadas. Resulta contrario a nuestro estado de derecho requerir que una menor de edad, víctima de un delito sexual, utilice un lenguaje clínico para relatar públicamente ante un grupo de extraños su experiencia de agresión sexual. Me pregunto, ¿qué tipo de testimonio hubiera considerado suficiente la Opinión disidente? ¿Cuánto más técnico debió ser el testimonio de la menor para cumplir con el estándar probatorio que la Opinión disidente pareciera exigir? Recordemos que el testimonio de un testigo principal, **por sí solo, es suficiente en derecho para sostener un fallo condenatorio y que este no consiste exclusivamente del relato verbal del testigo. Véase** Pueblo v. Toro Martínez, 200 DPR 834 (2018).

### III

Es necesario hacer un comentario final. Si bien el testimonio de la menor TIRN evidencia explícitamente la comisión del delito de incesto, aprovecho esta coyuntura para reseñar la particularidad de estos tipos de casos. Los delitos de índole sexual representan una de las amenazas más grandes para nuestra niñez. Según las cifras más recientes, más de la mitad de las víctimas de delitos sexuales reportados en el 2021 fueron menores de 17 años.[6] Las autoridades en el tema coinciden en que las cifras de

---

[6] Véase Adriana Díaz Tirado, "La violencia sexual golpea a la niñez: el 74% de los casos en 2021 se reportaron en menores de edad", 22 de mayo de 2022, El Nuevo Día, www.elnuevodia.com/noticias/seguridad/notas/la-violenica-sexual-golpea-a-la-niñez-el-74-de-los-casos-en-2021-se-reportaron-en-menores-de-edad (última visita, 18 de abril de 2024).

incidentes reportados distan grandemente de la realidad.[7] El temor, el desconocimiento, y el sentido de culpabilidad, entre otros factores, causan que los y las menores de edad se cohíban de denunciar estos ataques o que, aun cuando se denuncien, estos lleguen a su conclusión judicial.

Las víctimas menores de edad afrontan, no tan solo las consecuencias emocionales del abuso, sino además los efectos traumáticos de denunciar a su agresor. Múltiples factores emocionales y psicológicos, como lo son los sentimientos de culpa y vergüenza, pueden impactar la habilidad de testificar de un menor. Asimismo, las víctimas menores de edad tardan en hablar de sus experiencias traumáticas ya que carecen de la madurez y el conocimiento necesario para reconocer la severidad y la antijuricidad de lo ocurrido.[8] Se ha demostrado que estas albergan miedo sobre tener que

---

[7] Véase Adriana Díaz Tirado, "Levantan bandera sobre la subestimación del abuso sexual en varones: 'Esa visión machista pone en riesgo a mujeres y a jóvenes'", 10 de marzo de 2024, El Nuevo Día, www.elnuevodia.com/noticias/seguridad/notas/levantan-bandera-sobre-la-subestimacion-del-abuso-sexual-en-varones-esa-vision-machista-pone-en-riesgo-a-mujeres-y-jovenes/ (última visita, 18 de abril de 2024); Adriana Díaz Tirado, "La violencia sexual golpea a la niñez: el 74% de los casos en 2021 se reportaron en menores de edad", 22 de mayo de 2022, El Nuevo Día, www.elnuevodia.com/noticias/seguridad/notas/la-violenica-sexual-golpea-a-la-niñez-el-74-de-los-casos-en-2021-se-reportaron-en-menores-de-edad (última visita, 18 de abril de 2024); Estadísticas de delitos, Negociado de la Policía de Puerto Rico, www.policia.pr.gov/estadisticas (última visita, 18 de abril de 2024).
[8] Véase Elmi, M. H., Daignault, I. V., & Hébert, M., "Child sexual abuse victims as witnesses: The influence of testifying on their recovery", 86 Child Abuse & Neglect 22 (2018); Back, C., Gustafsson, P.A., Larsson, I., & Berterö, C., "Managing the legal proceedings: An interpretative phenomenological analysis of sexually abused children's experience with the legal process, 35 (Núm. 1) Child Abuse & Neglect 51 (2011); Gal, T. & Windman, V., "Child victims in Israel: Varieties of difficulties, few solutions", 63 Social Security 210 (2003); Quas, J.A., Wallin, A.R., Horwitz, B., Davis, E., & Lyon, T.D. "Maltreated children's understanding of and emotional reactions to dependency court involvement", 27 (Núm. 1) Behavioral Sciences & the Law 97 (2009); Troxel, N.R., Ogle, C.M., Cordon, I., Lawler, M., & Goodman, G.S. "Child witnesses in criminal court", Children as victims, witnesses, and offenders: Psychological science and the law 155-166 (2009).

detallar su experiencia a extraños y, más allá de esto, frente a su presunto agresor. Su falta de comprensión sobre los procesos judiciales y la extensión de estos, exacerban los sentimientos de ansiedad, culpabilidad y contribuyen a la revictimización.[9] Este cuadro se agrava con el hecho de que **la mayoría de los delitos sexuales son cometidos por personas conocidas a la víctima, y no por extraños.**[10] Al enfrentarnos a la tarea de entender en controversias en las cuales las víctimas sean menores de edad, debemos evitar que nuestro análisis se abstraiga de las condiciones materiales a las que estas se enfrentan. Es precisamente por esto que nuestro ordenamiento considera el testimonio como un conjunto de factores.[11] Después de todo, como juzgadores buscamos desentrañar la verdad para determinar si esta configura los elementos del delito imputado.

En el caso que resolvemos hoy, la menor TIRN vivió una experiencia traumática a una edad temprana, a saber, esta tenía de 10 a 11 años cuando ocurrieron los hechos. A esto se le añade que el trauma ocasionado y la ausencia de madurez biológica y emocional de la menor juegan un rol determinante en el modo y naturaleza de su testimonio. **La vara probatoria**

---

[9] Véase nota al calce 8.

[10] Véase I. Rosario Nieves, *El Ofensor Sexual Peligroso: Naturaleza jurídica e (in)eficiencia del Registro de Ofensores Sexuales,* 1ra e. rev., Puerto Rico, Publicaciones Puertorriqueñas, pág. 233 *citando a* Berliner, L., Schram, D., Miller, L., & Milloy, C. D. (1995). A Sentencing Alternative for Sex Offenders: A Study of Decision Making and Recidivism. Journal of Interpersonal Violence, 10(4), 487-502.; Bureau of Justice Statistics. (2000). Sexual Assault of Young Children as Reported to Law Enforcement: Victim, Incident, and Offender Characteristics (NCJ 182990).

[11] Véase: Pueblo v. García Colón I, 182 DPR 129 (2011); Arguello v. Arguello, 155 DPR 62 (2001).

**no es, ni debe ser, más alta para víctimas de violencia sexual que testifican ante el tribunal para vindicar sus derechos a una vida libre de violencias.** Si bien la discreción que le debemos a los foros de instancia no es irrestricta, en el presente caso no se configuran los criterios necesarios para que intervengamos con ella.


                                    Maite D. Oronoz Rodríguez
                                         Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

Peticionario

v.

Efrén A. Negrón Ramírez

Recurrido

CC-2023-0210

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 23 de abril de 2024.

Disiento respetuosamente de la Opinión que suscribe una mayoría de este Tribunal. Luego de un examen libre y sereno de la totalidad de la prueba admitida en el juicio, albergo duda razonable sobre la culpabilidad del señor Negrón Ramírez en lo que respecta a la convicción por el delito de incesto. Por esta razón, tal cual hizo el Tribunal de Apelaciones, entiendo que correspondía revocar la determinación de culpabilidad emitida por el Tribunal de Primera Instancia con relación al cargo por el Art. 131 del Código Penal de 2012, infra, pues de la evidencia que obra en el expediente no surge base suficiente para apoyar tal conclusión. Como esa no

fue la determinación a la que hoy arribó esta Curia, disiento.

I

El 8 de diciembre de 2020, el Ministerio Público presentó seis (6) acusaciones contra el Sr. Efrén Negrón Ramírez (recurrido). En sí, se alegó que el señor Negrón Ramírez realizó varios actos constitutivos del delito de actos lascivos, según el Art. 144(a) del Código Penal de Puerto Rico de 2004 (derogado), 33 LPRA ant. sec. 4772, y el Art. 133(a) del Código Penal de Puerto Rico de 2012, 33 LPRA sec. 5194. Además, se le acusó de cometer el delito de incesto, tipificado en el Art. 131 del Código Penal de Puerto Rico de 2012, 33 LPRA sec. 5192, y de violar el Art. 75 de la Ley para el Bienestar y Protección Integral de la Niñez (derogada), Ley Núm. 177-2003, 8 LPRA ant. sec. 450c.

En cuanto al delito de incesto, único cargo aquí en controversia, el Ministerio Público alegó lo siguiente:

> Caso núm. JIS2020G0007, Art. 131 (incesto), Código Penal de Puerto Rico
>
> El referido acusado, Efrén Antonio Negrón Ramírez, allá en o para principios del año 2016, y en Juana Díaz, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Ponce a propósito llevó a cabo una penetración sexual vaginal digital con la menor [TIRN] de 11 años de edad, consistente en que le metió la mano por arriba del pantalón y después él con un dedo lo metió completo en su vagina y lo movía para los lados como por cuatro a cinco minutos, teniendo este una relación de parentesco por consanguinidad con la menor por ser su tío materno.

Tras determinarse causa probable en todas las denuncias, en el mes de diciembre de 2021 se llevó a cabo el juicio por jurado en contra del señor Negrón Ramírez. La prueba documental de cargo presentada por el Ministerio Público consistió en una declaración del sospechoso, las advertencias Miranda, copia de seis folios de un diario de la testigo NIRN, entre otros documentos. Asimismo, se presentaron varios testimonios, entre los que destacan el de la agente de la Policía de Puerto Rico, Amarilis Sotomayor Pérez, el de la menor TIRN y el de la joven NIRN. Estas últimas dos fueron víctimas de los delitos imputados. Por su parte, el acusado presentó el testimonio bajo juramento de su madre.

Escuchados los testimonios y evaluada la prueba, el 15 de diciembre de 2021 el jurado emitió un veredicto de culpabilidad en todos los cargos imputados. Posteriormente, el Tribunal de Primera Instancia impuso la pena siguiente: por el Art. 144(a) del Código Penal de 2004, _supra_, ocho (8) años de cárcel; por el Art. 133(a) del Código Penal de 2012, _supra_, quince (15) años de cárcel en cada uno de los tres cargos; por el Art. 131 del Código Penal de 2012, _supra_, cincuenta (50) años de cárcel; y, por el Art. 75(b) Ley Núm. 177-2003, _supra_, ocho (8) años de cárcel. Ahora bien, por entender que existía un concurso real de delitos, el foro primario partió de la pena máxima de 50 años e impuso como pena agregada el 20% por todos los demás cargos, para un total de 10 años adicionales. Conjuntamente, debido a la

reincidencia simple que fue aceptada por el ahora convicto, se añadió el 25% a la pena fija de 50 años, o sea, 12 años y seis meses más. Así pues, el señor Negrón Ramírez fue condenado a cumplir una pena de 72 años y seis meses de reclusión.

Inconforme, el recurrido acudió al Tribunal de Apelaciones y señaló que la prueba de cargo no había establecido su culpabilidad más allá de duda razonable. En particular, argumentó que el Ministerio Público no probó el elemento esencial de penetración requerido en el delito de incesto, por lo que no rebatió la presunción de inocencia que le cobijaba.

En contraposición, el Pueblo de Puerto Rico, por voz del Procurador General, sostuvo que se probaron todos los delitos imputados más allá de duda razonable. Por este motivo, argumentó que la determinación del foro primario debía permanecer inalterada.

Con el beneficio de la comparecencia de ambas partes y de la transcripción de la prueba oral (TPO) presentada en el juicio por jurado, el Tribunal de Apelaciones emitió una sentencia en la que confirmó las convicciones emitidas en todos los cargos de actos lascivos y maltrato de menores. No obstante, revocó la convicción en cuanto al delito de incesto. En lo pertinente, manifestó:

> Luego de analizar con detenimiento el testimonio de todos los testigos de cargo, según transcritos en la TPO que obra en el expediente ante nos – particularmente el de la joven TIRN – **concluimos que en el presente caso hay ausencia de prueba**

**sobre el elemento de la penetración requerido en el delito de incesto**, tipificado en el Art. 131 del Código Penal de 2012, *supra*. **Ello, constituye un error manifiesto debido a que la conclusión de que se cometió el delito de incesto está en conflicto con la evidencia desfilada en el Juicio.** Por lo tanto, procede la revocación de la convicción por dicho artículo, pues no se establecieron todos sus elementos más allá de duda razonable. (Negrillas suplidas).

En desacuerdo con este revés, tanto el Ministerio Público como el señor Negrón Ramírez solicitaron reconsideración. No obstante, el foro apelativo intermedio proveyó no ha lugar a ambas mociones.

Insatisfecho, el Estado presentó un recurso de *certiorari* ante nos mediante el cual esbozó dos (2) señalamientos de error:

[1] El Tribunal de Apelaciones cometió un craso error de derecho al sustituir – con una simple transcripción – la valoración que el Jurado realizó de la prueba y revocar la convicción del señor Negrón Ramírez por el delito de incesto, tipificado en el Código Penal de Puerto Rico, tras erróneamente concluir que no hubo penetración.

[2] El Tribunal de Apelaciones incidió crasamente al exonerar de culpa al recurrido del delito de incesto, en lugar de ejercer su facultad bajo la Regla 213 de Procedimiento Criminal, 34 LPRA Ap. II, aplicada en <u>Pueblo v. Candelario Couvertier</u>, 100 DPR 159 (1971) y <u>Pueblo v. Ayala García</u>, […] [186 DPR 196 (2012)] y hallarlo culpable del delito de actos lascivos, un delito menor incluido.

En riposta, el señor Negrón Ramírez presentó un alegato en el que solicitó que confirmemos la determinación del foro apelativo intermedio. En síntesis, recalca que en el juicio no se presentó prueba sobre el elemento de penetración requerido para decretar culpabilidad por el delito de

incesto. Por lo tanto, manifestó que no se rebatió su presunción de inocencia más allá de duda razonable.

Después de evaluar detenidamente el asunto, estimo que el Tribunal de Apelaciones no erró cuando determinó que en este caso hay ausencia de prueba sobre el elemento de penetración constitutivo del delito de incesto, por lo que la conclusión de que se cometió ese crimen está en conflicto con la evidencia desfilada en el juicio.

II

A. *La presunción de inocencia*

Uno de los derechos fundamentales que cobija a toda persona acusada de delito es la presunción de inocencia. Pueblo v. Irizarry, 156 DPR 780, 786 (2002). Esta garantía está consagrada en el Art. II, Sec. 11 de la Constitución de Puerto Rico, que dispone:

> En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, **y a gozar de la presunción de inocencia**. (Negrillas suplidas). Art. II, Sec. 11, Const. PR, LPRA Tomo 1.

En virtud de esta protección, nuestro ordenamiento exige que la culpabilidad de una persona acusada se pruebe más allá de duda razonable. Pueblo v. Robles González, 125 DPR 750, 756 (1990). Por esta razón, la Regla 110 de Procedimiento Criminal establece que "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se

probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá". 34 LPRA Ap. II.

Esto significa que el acusado no tiene necesidad alguna de aportar prueba para defenderse y puede descansar plenamente en la presunción de inocencia que le asiste. Pueblo v. Toro Martínez, 200 DPR 834, 855-856 (2018); Pueblo v. García Colón I, 182 DPR 129, 174 (2011); Pueblo v. Irizarry, supra, págs. 787-788. Esa obligación no es susceptible de ser descargada livianamente pues, para que pueda obtenerse una convicción válida que derrote la presunción de inocencia, el Ministerio Público deberá presentar prueba que satisfaga el mencionado "quantum" de prueba respecto a cada uno de los elementos del delito, su conexión con el acusado y la intención o negligencia criminal de este último. Pueblo v. Irizarry, supra, págs. 787-788. Esta prueba tiene que ser tanto suficiente como satisfactoria, "es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". Íd. Véase, Pueblo v. Acevedo Estrada, 150 DPR 84, 100 (2000).

La determinación de si se satisfizo el estándar probatorio requerido, o sea, si se probó la culpabilidad del acusado más allá de duda razonable, le corresponde en primer lugar al juzgador de hechos, quien vendrá llamado a evaluar y aquilatar la evidencia con el propósito de determinar cuáles hechos han quedado establecidos o demostrados. Regla 110 de Procedimiento Criminal, supra.

Ahora bien, el mencionado estándar tampoco requiere que la culpabilidad del acusado sea demostrada con certeza matemática. Pueblo v. Maisonave Rodríguez, 129 DPR 49, 71 (1991). Menos aún se pretende que se disipe cualquier duda especulativa, imaginaria o posible. En sí, "duda razonable" es aquella que surge como producto del raciocinio de todos los elementos de juicio involucrados en el caso. Pueblo v. Irizarry, supra, pág. 788. Más bien, la duda razonable que motiva la absolución del acusado es la que causa insatisfacción o intranquilidad en la conciencia del juzgador, luego de evaluar en su totalidad la prueba de cargo de forma "justa, imparcial y serena". Pueblo v. García Colón I, supra, pág. 175. Véase, además, Pueblo v. Santiago et al., 176 DPR 133, 143 (2009).

En resumen, la presunción de inocencia se trata de una norma de suficiencia de la prueba que, según la Regla 110 de Procedimiento Criminal, supra, conlleva que se absuelva al acusado si luego de un estudio de la totalidad de la evidencia existe duda razonable sobre si cometió los hechos por los que se le acusa.

B. *Revisión apelativa en casos criminales*

Por otro lado, la Regla 193 de Procedimiento Criminal, supra, viabiliza el derecho que tiene todo convicto de apelar su convicción ante un tribunal de superior jerarquía, el cual podrá pasar juicio sobre la determinación de culpabilidad hecha por el Tribunal de Primera Instancia. Esto se debe a que la apreciación realizada por el juzgador

de hechos sobre la culpabilidad de un acusado es una cuestión mixta de hecho y de derecho que podrá ser evaluada en apelación. Pueblo v. Casillas, Torres, 190 DPR 398, 415-416 (2014).

Al evaluar si se probó la culpabilidad de un acusado más allá de duda razonable, los foros apelativos no debemos abstraernos de la ineludible realidad de que los jueces de primera instancia y los jurados están en mejor posición de apreciar y aquilatar la prueba y los testimonios presentados. Íd. Por lo tanto, la apreciación imparcial que realiza el juzgador de la prueba en el foro primario merece gran respeto y deferencia por parte de los foros apelativos. Íd. La regla general es que el foro revisor no debe intervenir con la adjudicación de credibilidad de los testigos ni sustituir las determinaciones de hechos basadas en las apreciaciones de esa prueba. Pueblo v. Toro Martínez, supra, pág. 858.

Empero, aunque la determinación de culpabilidad hecha por el juzgador de hechos merece gran deferencia, esta podrá ser revocada en apelación si se demuestra que hubo pasión, prejuicio, parcialidad o si se incurrió en error manifiesto debido a que la prueba no concuerda con la realidad fáctica o es increíble o imposible. Pueblo v. Hernández Doble, 210 DPR 850, 864-865 (2022). Conscientes de que el juzgador de hechos podría equivocarse en la apreciación de la prueba, hemos establecido que los foros apelativos podrán intervenir cuando de una evaluación minuciosa surjan serias dudas,

razonables y fundadas, sobre la culpabilidad del acusado. Pueblo v. Casillas, Torres, supra, pág. 417; Pueblo v. Santiago, supra, pág. 148; Pueblo v. Irizarry, supra, pág. 789. En otras palabras, **"si de un análisis ponderado de la prueba desfilada ante el foro primario surge duda razonable y fundada sobre si la culpabilidad del acusado fue establecida más allá de duda razonable, este Tribunal tiene el deber de dejar sin efecto el fallo o veredicto condenatorio"**. Pueblo v. Casillas, Torres, supra, pág. 417.

De acuerdo con lo anteriormente señalado, no podemos permitir que, en el afán de ceñirnos a la doctrina de la deferencia, prevalezca un fallo condenatorio incluso estando convencidos de que un examen integral de la prueba no establece la culpabilidad del acusado más allá de duda razonable. Pueblo v. Irizarry, supra, pág. 790. Como pronunciamos anteriormente, existe duda razonable cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba de cargo presentada. En atención a ese principio, nosotros, como foros apelativos, al igual que el foro recurrido, tenemos el derecho y el deber de tener la conciencia tranquila y libre de preocupación al momento de revisar un fallo condenatorio. Íd.

C. *Suficiencia de la prueba vs apreciación de la prueba*

Aunque están estrechamente relacionadas, la determinación de prueba suficiente para sostener la

culpabilidad del imputado no debe confundirse con la corrección de la apreciación de la prueba que realizó el juzgador de los hechos. E. Rivera García, *El juez constitucional del siglo XXI: reflexiones sobre los criterios de revisión judicial*, 4 P.R. Law. Ass'n. L. Rev. 67, 77 (2019).

Cuando estamos ante un reclamo de suficiencia o insuficiencia de prueba, nuestra función consiste en evaluar si la evidencia admitida cumplió con el estándar probatorio de establecer la culpabilidad del acusado más allá de duda razonable. Íd. Ante estos reclamos, debemos considerar únicamente la totalidad de la prueba que tuvo ante sí el Tribunal de Primera Instancia para determinar si, en efecto, el Ministerio Público satisfizo su responsabilidad probatoria. Íd. En estos casos, como recoge la Opinión mayoritaria en su pág. 16, "al tratarse de una cuestión de suficiencia, **el tribunal revisor estará en una posición más apta para intervenir con la determinación del foro inferior**". (Negrillas suplidas). Esto se debe a que, como vimos, los foros revisores no debemos confirmar una sentencia condenatoria si estamos convencidos de que la totalidad de la prueba no establece la culpabilidad del acusado más allá de duda razonable. Véase, Pueblo v. García Colón I, supra, pág. 175.

En cambio, cuando estamos ante un reclamo de apreciación de la prueba, lo que se cuestiona es el valor, la credibilidad o el aquilatamiento que el juzgador le adjudicó

a la prueba presentada en el juicio. Este análisis requiere elementos adicionales a considerar, pues debemos tener presente que los juzgadores de primera instancia están en mejor posición que los jueces revisores al momento de apreciar y aquilatar la evidencia. Rivera García, supra, pág. 78; Pueblo v. García Colón I, supra, pág. 165. De hecho, es para este tipo de reclamos en donde se debe guardar la mayor deferencia posible a los juzgadores que, de primera mano, observaron la evidencia. Íd. Por ello, únicamente se intervendrá cuando estén presentes las excepciones anteriormente mencionadas, entiéndase, que hubo pasión, prejuicio, parcialidad o error manifiesto cuando se aquilató la prueba. Pueblo v. Hernández Doble, supra, pág. 864.

En fin, al discutir el tema de la suficiencia de la prueba para lograr una convicción más allá de duda razonable, en Pueblo v. Casillas, Torres, supra, pág. 416, citando a Pueblo v. Colón, 140 DPR 564, 581-582 (1996), enunciamos:

> [l]a suficiencia de la prueba es, pues, un análisis estrictamente en derecho que, aunque recae sobre la evidencia, sólo busca asegurar que, de cualquier manera en que se interprete la veracidad, los requisitos legales estarán presentes para poder permitir cualquiera de los veredictos posibles. **Ante prueba insuficiente, un jurado no podría hallar culpable al acusado irrespectivamente de si la prueba amerita o no su credibilidad.** (Énfasis en el original suprimido y negrillas suplidas).

Expuesto este marco legal, pasemos ahora a revisar los delitos de incesto y actos lascivos por los cuales fue acusado el señor Negrón Ramírez.

D. *Delito de incesto*

El Art. 131 del Código Penal de Puerto Rico de 2012 tipifica el delito de incesto de la manera siguiente:

**Artículo 131. — Incesto.**

Serán sancionadas con pena de reclusión por un término fijo de cincuenta (50) años, aquellas personas que tengan una relación de parentesco, por ser ascendiente o descendiente, por consanguinidad, adopción o afinidad, o colateral por consanguinidad o adopción, hasta el tercer grado, o por compartir o poseer la custodia física o patria potestad y que a propósito, con conocimiento o temerariamente lleven a cabo un acto orogenital o una penetración sexual vaginal o anal, ya sea ésta genital, digital o instrumental. Art. 131 del Código Penal de Puerto Rico de 2012, Ley Núm. 146-2012, según enmendada. 33 LPRA sec. 5192.

En consonancia, el Art. 132 del Código Penal de Puerto Rico de 2012 indica:

**Artículo 132. — Circunstancias esenciales de los delitos de agresión sexual e incesto.**

El delito de agresión sexual o de incesto consiste esencialmente en la agresión inferida a la integridad física, síquica o emocional y a la dignidad de la persona. Cualquier acto orogenital o penetración sexual, vaginal o anal, ya sea ésta genital, digital o instrumental, por leve que sea, bastará para consumar el delito. Art. 132 del Código Penal de Puerto Rico de 2012, supra, 33 LPRA sec. 5193.

Como podemos observar, para que se configure el delito de incesto es necesario que: (1) a propósito, con conocimiento o temerariamente; (2) se realice un acto orogenital o una penetración sexual vaginal o anal (genital, digital o instrumental), por leve que sea, y (3) que las personas involucradas se encuentren dentro de los grados de parentesco prohibidos.

E. *Delito de actos lascivos*

El delito de actos lascivos está tipificado en el Art. 133 del Código Penal de Puerto Rico de 2012, supra. Para una acusación como la de este caso, los incisos (a) y (f) del mencionado artículo disponen:

> Toda persona que a propósito, con conocimiento o temerariamente, sin intentar consumar el delito de agresión sexual descrito en el Artículo 130, someta a otra persona a un acto que tienda a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado, en cualquiera de las circunstancias que se exponen a continuación, será sancionada con pena de reclusión por un término fijo de ocho (8) años, más la pena de restitución, salvo que la víctima renuncie a ello:
>
> > (a) Si la víctima al momento del hecho es menor de dieciséis (16) años de edad.
> > […]
> > (f) **Si el acusado tiene una relación de parentesco con la víctima, por ser ascendiente o descendiente, por consanguinidad, adopción o afinidad, o colateral por consanguinidad o adopción, hasta el tercer grado, o por compartir o poseer la custodia física o patria potestad.**
> > […]
> > Cuando el delito se cometa en cualquiera de las modalidades descritas en los incisos (a) y (f) de este Artículo, o se cometa en el hogar de la víctima, o en cualquier otro lugar donde ésta tenga una expectativa razonable de intimidad, la pena del delito será de reclusión por un término fijo de quince (15) años más la pena de restitución, salvo que la víctima renuncie a ello. (Negrillas suplidas).

Según la profesora Dora Nevares Muñiz, el acto lascivo se define como uno que tiende a despertar, excitar o satisfacer la impudicia, pasión o deseos sexuales del imputado a costa de la víctima. D. Nevares Muñiz, *Código Penal de Puerto Rico*, comentado, 3ra ed., San Juan, Inst. Desarrollo del Derecho, 2015, pág. 218. Se trata de un delito

intencional que, aunque se realiza sin ánimo de acceso o penetración sexual, ofende el pudor e indemnidad sexual de la víctima por no ser consentido. Íd. Los elementos del delito son: someter sin su consentimiento, o con un consentimiento jurídicamente inválido, a un acto que tienda a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado, sin intención de cometer una penetración sexual, en cualquiera de las modalidades que especifica el artículo. Íd., págs. 217-218.

Este era el derecho que debíamos aplicar para resolver la controversia.

III

A. En el primer señalamiento de error ante nuestra consideración, el Estado alegó que el Tribunal de Apelaciones se equivocó al revocar la convicción del señor Negrón Ramírez bajo el pretexto de que no se presentó evidencia sobre el elemento de penetración. El Ministerio Público sustentó que sí se presentó esa prueba y que la culpabilidad del recurrido fue probada más allá de duda razonable. Tras examinar el expediente y la totalidad de la evidencia que tuvo ante sí el Tribunal de Primera Instancia, determino que no le asiste la razón al Estado.

Como mencionamos, en cuanto al delito de incesto, el señor Negrón Ramírez fue declarado culpable por el Tribunal de Primera Instancia a raíz de una acusación en donde se le imputó que, en el 2016, a propósito llevó a cabo una penetración vaginal digital con la menor TIRN, teniendo este

una relación de parentesco por consanguinidad con la menor por ser su tío. Posteriormente, esta convicción fue revocada, pues el Tribunal de Apelaciones razonó que no se establecieron todos los elementos del delito más allá de duda razonable. El foro apelativo intermedio entendió que en este caso hay ausencia de prueba sobre el elemento de la penetración requerido en el delito de incesto, y que ello constituye un error manifiesto debido a que la conclusión de que se cometió el delito de incesto no se sustenta con la evidencia desfilada en el juicio.

Para discutir este señalamiento de error, es necesario acudir al testimonio de la menor, según surge de la TPO. Sobre el incidente en cuestión, la joven TIRN declaró que mientras se encontraba en casa de sus abuelos, en donde también residía el señor Negrón Ramírez, este le pidió que fuera a su habitación para entregarle algunos dulces. Una vez en el cuarto, la menor TIRN se paró frente a la cama y comenzó a comerse los dulces.[1] Mientras tanto, expresó que el recurrido procedió a tocarle y acariciarle los muslos.[2] Dichos movimientos continuaron hasta que el acusado desplazó su mano hasta los genitales de la menor y los manoseó.[3] Tras refrescar su memoria con su declaración jurada, según lo permite la Regla 613 de Evidencia, supra, la menor TIRN testificó lo siguiente:

_____

[1] TPO, a la pág. 158, líneas 14-23; Ap. del certiorari, págs. 289.
[2] TPO, a la pág. 158, líneas 28-31, y a la pág. 159, líneas 1-13; Ap. del certiorari, págs. 289-290.
[3] TPO, a la pág. 158, líneas 28-31, y a la pág. 159, líneas 1-13; Ap. del certiorari, págs. 289-290.

**Fiscal:** Luego de, de leer su declaración jurada, verdad y refrescar su memoria, dígale a las damas y caballeros del jurado qué sucedió allí mientras su tío le estaba tocando su área de su vagina.

**Testigo:** Pues é, eh, hubo momentos…

**Fiscal:** Ajá.

**Testigo:** …que él, eh, bajó mis pantalones…

**Fiscal:** Mjm.

**Testigo:** … y me empezó a, a acariciarme la vagina otra vez.

**Fiscal:** Ok, dile a las damas y caballeros del jurado, este, cómo te acariciaba entonces, la vagina cuando usted dice que le baja los pantalones.

**Testigo:** Él, sobándola, él me acariciaba, ehm, hacia los lados, o hacia arriba y hacia abajo.

**Fiscal:** hacia arriba y hacia abajo ¿con qué?

**Testigo:** Eh, con sus dedos.

**Fiscal:** Con sus dedos, y cuando usted dice hacia arriba y hacia abajo ¿hacia arriba y hacia abajo dónde?

**Testigo:** En mi vagina.

**Fiscal:** Ok, eh y dígale a las damas y caballeros del jurado, este, si eso era por encima o por debajo de la ropa.

**Testigo:** Eh, por debajo.

**Fiscal:** Por debajo y cuando su, usted dice por debajo de la ropa ¿a qué se refiere?

**Testigo:** Eh, por debajo de, de mi ropa interior.

**Fiscal:** Ok, por debajo de tu ropa interior, ok. Entonces, eh ¿qué era lo que hacía entonces Efrén con el dedo en tu área de tu vagina?

**Testigo:** Pues el solo lo mo, lo movía por los lados, en, **por la superficie.**

**Fiscal: ¿Lo movía por los lados en la superficie?**

**Testigo: Sí.**

**Fiscal:** Ok ¿Por cuánto tiempo eso duró?

**Testigo:** Como uno o dos minutos.

**Fiscal:** Ok ¿y qué usted sintió?

**Testigo:** Yo, yo sentía, como unos cosquilleos, pero, me sentía mal, "ininteligible".

**Fiscal:** Unos cos, eh ¿la escucharon? Ok. Este…

**Jueza:** Bien, debe subir, mantener…

**Fiscal:** Sí.

**Jueza:** …la voz arriba.

**Fiscal:** Sí.

**Jueza:** Adelante.

**Fiscal:** Ok, eh, ¿dónde estaba ubicada la mano de Efrén con respecto a tu ropa interior?

**Testigo:** Eh, hacia el frente.

**Fiscal:** Frente, ok. Y descríbale a las damas y caballeros del jurado, verdad, usted dijo que lo movía hacia arriba y hacia abajo el dedo ¿cómo era que hacía ese movimiento? si lo puede describir con la mano.

**Testigo:** "Ininteligible"…

**Fiscal:** ¿Ah?

**Defensa:** Juez, juez y pe, perdón, yo no estoy escuchando aquí muy bien, me imagino que el jurado…

**Jueza: Sí, no ha contestado nada…**

**Fiscal: "Ininteligible", no ha dicho nada.**

**Jueza:** …pero, debes hablar fuerte, para no volver a repetir. Repita la pregunta, fiscal.

**Fiscal:** Si puede hacer el movimiento, testigo, cuando usted dice que, que movía su dedo hacia arriba y hacia abajo, en su vagina, si puede hacer el movimiento para que las damas y caballeros del jurado puedan observar. Con su mano.

**Testigo:** Él, él "ininteligible" …

**Fiscal:** ¿Cómo?

**Testigo:** Que él, él hacía como así, como, como así.

**Fiscal:** Ok, ¿y hacia arriba hacia dónde era que él movía su dedo?

**Testigo:** En, en mi área privada.

**Fiscal:** En tu área privada. Eh te pregunto, testigo ¿qué si algo tú sentías físicamente? Ya dijiste que te sentías mal, pero físicamente ¿qué si algo tú sentías?

**Testigo:** En, físicamente no, no hacía nada.

.    .    .    .    .    .    .    .

**Fiscal:** Ok, eh, te pregunto, eh [TIRN], verdad, luego de que pasara eso por varios minutos, dígale a las damas y caballeros del jurado qué sucedió entonces, luego.

**Testigo:** Eh, después de eso, yo, yo me subí los pantalones y me fui a la sala con mis hermanos. (Negrillas suplidas).⁴

Luego de un análisis meticuloso de los testimonios que obran en el expediente de todos los testigos de cargo, con especial atención al de la joven TIRN, entiendo que el Tribunal de Apelaciones no abusó de su discreción al determinar que hay ausencia de prueba sobre el elemento de penetración. Este elemento del delito es trascendental pues,

---

⁴ TPO, a la pág. 162, líneas 19-31, a la pág. 163, líneas 1-31; y la pág. 164, líneas 1-21, y a la pág. 165, línea 1; Ap. del certiorari, págs. 293-296.

como señaláramos anteriormente, la Asamblea Legislativa así lo plasmó cuando redactó el Art. 131 del Código Penal de Puerto Rico de 2012. La ausencia de prueba sobre un elemento del delito constituye un error manifiesto y un abuso de discreción por parte del Tribunal de Primera Instancia debido a que la conclusión de que se cometió el delito de incesto está en conflicto con la evidencia desfilada en el juicio. Peor aún, la prueba testifical establece que los actos del señor Negrón Ramírez, por más repugnantes que sean, se cometieron en la superficie de los genitales de la menor. No se indicó ni siquiera que hubo una penetración leve. Por lo tanto, procedía que este Tribunal revocara la convicción por dicho artículo, pues no se establecieron todos sus elementos más allá de duda razonable.

Al interpretar qué constituye una penetración sexual para efectos de nuestro Código Penal, desde 1907 hemos manifestado que "[a]ún una ligera penetración ha sido declarada suficiente en casi todos los casos, sin efectuarse una emisión por parte del hombre, para consumar el delito de violación; y el efecto de penetración no depende, como lo indica la corte inferior, de si la mujer hace o no resistencia, o de si se encuentra o no incapacitada para hacerla". El Pueblo v. Cancel, 13 DPR 178, 186 (1907); véase, además, El Pueblo de Puerto Rico v. Pérez Rivera, 129 DPR 306, 317 (1991) (Sentencia). En sintonía, aclaramos que no es esencial evidenciar que hubo ruptura del himen para demostrar la penetración. Pueblo v. Díaz Martínez, 87 DPR

691, 697 (1963). Por esto, no hay dudas en cuanto a que cualquier introducción vaginal genital, digital o instrumental, por mínima que sea, es suficiente para consumar el delito de incesto. Precisamente, evidencia de tal introducción es de lo que carece este caso, pues el expediente es silente en ese sentido y ni tan siquiera puede demostrar una leve penetración.

La Opinión de la mayoría se ampara en jurisprudencia no vinculante para tratar de sostener su postura. De esto modo, cita con aprobación cierta sentencia dictada por el Tribunal Supremo de España que indicó que "todo lo que sea un exceso, por leve o breve que sea, de superación de la 'horizontalidad' en la zona sexual femenina supone la existencia de agresión sexual". STS 454/2021, 27 mayo 2021. Asimismo, plasma una decisión de la Corte de Apelaciones de Georgia que afirmó "slight penetration, including entry of the anterior of the organ, is sufficient to meet the intercourse element of the incest statute". Raymond v. State, 232 Ga. App. 228, 229 (1998). También lo manifestado por la Corte de Apelaciones de Indiana sobre que "Indiana law does not require that the vagina be penetrated, only that the female sex organ be penetrated". Winters v. State, 727 N.E. 2d. 758, 760 (Ind. Ct. App. 2000). A pesar de todo esto, la mayoría de esta Curia no logró identificar dónde en el expediente de marras está la prueba de tal "superación de la horizontalidad" o de una "slight penetration". No podían hacerlo, pues no surge del caso.

Si bien la Opinión mayoritaria reza que fueron los gestos realizados por la testigo los que llevaron al jurado a determinar que el elemento de penetración se había cometido, pasa por alto que la trascripción indica que la interacción fue superficial. De esta manera, aunque la apreciación que realiza el juzgador de hechos merece una gran deferencia, en este caso estamos ante un planteamiento de suficiencia de la prueba que, como reconoce la Mayoría, **nos pone en una posición más apta para intervenir con la determinación del foro inferior**. Esto es así, pues, los foros revisores no debemos confirmar una sentencia condenatoria si entendemos que la totalidad de la prueba no establece la culpabilidad del acusado más allá de duda razonable. Véase, Pueblo v. Irizarry, supra, pág. 789. Además, "[a]nte prueba insuficiente, un jurado no podría hallar culpable al acusado irrespectivamente de si la prueba amerita o no su credibilidad". Pueblo v. Casillas, Torres, supra, pág. 416.

La Opinión del Tribunal plantea que este caso se trata de determinaciones basadas en los movimientos, gestos y demostraciones no verbales que hizo la testigo en corte y que fueron vistos y creídos por el jurado. Sin embargo, en ninguna parte del expediente se mencionan, describen o ejemplifican esos movimientos. Ni siquiera el fiscal pudo plasmar para el récord cómo eran los gestos de la testigo que, según una mayoría de esta Curia, bastaron para rebatir la presunción de inocencia que cobija a todo ciudadano. La inferencia que una mayoría de los miembros de este cuerpo

pretende realizar en contra del señor Negrón Ramírez es, ante mis ojos, patentemente inconstitucional. Este precedente es muy peligroso porque, bajo el pretexto de la deferencia al jurado, se podrían validar convicciones con evidencia dudosa o con un expediente ausente de prueba.

Por esta razón, aunque en reiteradas ocasiones hemos sostenido que las determinaciones de hechos del foro primario **sustentadas en prueba oral** merecen gran deferencia por los tribunales apelativos, y que las valoraciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni sustituidas por el criterio del foro apelativo, **esto no procede si de la prueba admitida surge que no existe base suficiente que apoye tal determinación.** Véase, <u>Pueblo v. García Colón I</u>, <u>supra</u>, pág. 165; <u>Pueblo v. Acevedo Estrada</u>, <u>supra</u>, pág. 99.

Precisamente en este caso las determinaciones alcanzadas por el foro primario no están sustentadas por la prueba, **pues de la evidencia en el expediente no surge base suficiente para apoyar la conclusión de culpabilidad.** Por consiguiente, si luego de un examen de la prueba admitida, libre y sereno de toda inclinación o parcialidad, existe duda razonable sobre la culpabilidad de la persona imputada de delito, lo correcto es revocar la convicción. Véase, Regla 110 de Procedimiento Criminal, <u>supra</u>; <u>Pueblo v. Irizarry</u>, <u>supra</u>, pág. 789-790. Esta era la determinación que debimos alcanzar en esta ocasión, pues la falta de evidencia sobre un elemento esencial del delito de incesto impide que

despejemos la duda razonable que constitucionalmente asiste a todo acusado. No podemos, bajo el simpático discurso de proteger los derechos de las víctimas, obviar ni cargarnos los derechos de los individuos.

B. En cuanto al segundo señalamiento de error, el Ministerio Público sostuvo que, en la alternativa, el señor Negrón Ramírez debió ser hallado culpable del delito de actos lascivos, porque entiende que este es un delito menor incluido en el incesto. Tampoco le asiste la razón.

En primer lugar, es norma reiterada que para que el Estado pueda procesar criminalmente a un ciudadano, el debido proceso de ley exige que el acusado conozca la naturaleza y extensión de los delitos que se le imputan. Pueblo v. Soto Molina, 191 DPR 209, 218 (2014). Por ello, el pliego acusatorio debe incluir una exposición de todos los hechos que constituyen el delito específico. Íd. De esa forma, en principio, no se permite encontrar convicto a un acusado por un delito distinto al imputado en la acusación. Íd. Empero, a modo de excepción, la Regla 147 de Procedimiento Criminal, supra, avala la culpabilidad por un delito distinto siempre y cuando ese delito sea menor y esté incluido en el delito mayor imputado. Pueblo v. Soto Molina, supra, pág. 219. Véase, Pueblo v. Rivera Ortiz, 150 DPR 457, 463 (2000).

Para que se pueda hallar culpable a una persona por un delito menor incluido en el delito por el cual se le acusó, es necesario que los hechos expuestos en la acusación por el

delito mayor contengan los elementos esenciales del delito menor. Pueblo v. Ayala García, 186 DPR 196, 206-207 (2012). Si el delito mayor incluye todos los elementos requeridos por la ley en relación con el menor, el mayor incluye al menor. Por el contrario, el menor no está comprendido en el mayor si el menor requiere algún otro elemento indispensable que no es parte del delito mayor. Íd.; Pueblo v. Oyola Rodríguez, 132 DPR 1064, 1071 (1993). Para hacer la determinación, se analiza si no se puede cometer el delito imputado sin cometer también el menor incluido. Pueblo v. Ayala García, supra, pág. 206.

Con esto en mente, anteriormente explicamos que el delito de actos lascivos se comete cuando una persona somete a otra a realizar un acto que tiende a despertar, excitar o satisfacer su impudicia, pasión o deseos sexuales. Nevares Muñiz, op. cit., págs. 217-218. Se trata de una conducta intencional que ofende el pudor e indemnidad sexual de la víctima, pero se realiza sin ánimo de acceso o penetración sexual. Íd. En cambio, el delito de incesto se efectúa cuando a propósito, con conocimiento o temerariamente se lleva a cabo un acto orogenital o una penetración sexual vaginal o anal entre personas que se encuentran dentro de los grados de parentesco prohibidos.

Como podemos apreciar, el delito de actos lascivos contiene un elemento subjetivo que requiere evidenciar el estado mental del imputado como uno que realizó el acto en busca de despertar, excitar o satisfacer su impudicia,

pasión o deseos sexuales. En cambio, el incesto no requiere ese elemento, pues solo bastaría con demostrar que, a propósito, con conocimiento o temerariamente se llevó a cabo un acto orogenital o una penetración sexual entre determinados parientes. No hay que probar que el acusado buscaba excitarse o satisfacer su lascivia. Así pues, en la medida en que el delito de incesto no incluye todos los elementos requeridos para la comisión del delito de actos lascivos, podemos concluir válidamente que el segundo no es un delito menor incluido en el primero. Por esta razón, se puede cometer el delito de incesto sin que necesariamente se cometa el de actos lascivos.

Debo señalar que, aunque nos desconcierte el afán del legislador en requerir una penetración sexual o de un acto orogenital como elemento del delito de incesto, la solución es propiamente legislativa. Si bien esto nos pudiese chocar, pues socialmente pensamos en el incesto como cualquier acto sexual que se da entre personas con cierto grado de parentesco, la Asamblea Legislativa decidió codificar la conducta de someter a un familiar a realizar un acto que tiende a satisfacer la impudicia, pasión o deseos sexuales del agresor, en el artículo que criminaliza los actos lascivos, y no en el de incesto. Con ello, condicionó esta conducta a la pena de 15 años de reclusión, y no al término fijo de 50 años establecido en el artículo de incesto, una reducción significativa para una de las acciones más deplorables en nuestra sociedad. Atender esta cuestión le

corresponde con exclusividad a la Asamblea Legislativa, y no a nosotros, por lo que tenemos las manos amarradas en este asunto.

Ante este panorama, tal cual determinó el Tribunal de Apelaciones, no podíamos hacer otra cosa que no fuera revocar la sentencia del foro primario en cuanto al cargo por el Art. 131 del Código Penal de 2012, *supra*. Esto se debe a que la acusación aquí se limitó a imputar el delito de incesto, pero este no se probó. Como vimos, no se puede encontrar convicto a un acusado por un delito distinto al imputado, a no ser que sea un delito menor incluido, excepción que no aplica en este caso. Ahora bien, las convicciones en cuanto al cargo contra el Art. 144(a) del Código Penal de 2004 (actos lascivos), *supra*, los tres (3) cargos por el Art. 133(a) del Código Penal del 2012 (actos lascivos contra dos menores, incluyendo a TIRN), *supra*, y el cargo por el Art. 75(a) de la Ley Núm. 177-2003 (maltrato), *supra*, que surgieron de otros incidentes, permanecerían inalteradas. Con ello, correspondía modificar la sentencia para imponer una condena de 21 años y 9 meses de reclusión. Esto surge de que la pena máxima que por ley se puede imponer contra aquel que comete el delito de actos lascivos a una víctima con quien tiene cierta relación de parentesco es de 15 años. No obstante, según el concurso real de delitos, por los restantes cuatro (4) cargos solamente podríamos agregar hasta un máximo de 20% de la mencionada pena de 15 años, o sea, 3 años adicionales. Además, debido a la reincidencia

simple aceptada, se tenía que añadir un 25% de la pena de 15 años, lo que representa una suma de 3 años y 9 meses. Así, el señor Negrón Ramírez debió ser condenado a cumplir una pena de 21 años y 9 meses de reclusión.

Este resultado, entiéndase la condena tras el concurso real de delitos, aunque antipático, es producto exclusivo de la voluntad del legislador. Pueblo v. Acevedo Maldonado, 193 DPR 270, 280 (2015) (Op. de conformidad, Juez Asociado Martínez Torres). Estamos obligados a implementar las disposiciones nefastas del Art. 71 del Código Penal de Puerto Rico de 2012, 33 LPRA sec. 5104, y así rebajarle la pena a una persona condenada en varias ocasiones por el delito de actos lascivos. Véase, Pueblo v. Acevedo Maldonado, supra, pág. 280 (Op. de conformidad, Juez Asociado Martínez Torres). De hecho, la pena máxima es la misma si comete el delito contra dos, tres o cuatro personas. Bajo el funesto esquema diseñado por el legislador, después de la segunda víctima, ninguna otra cuenta al momento de imponer la pena. Íd.

IV

Para concluir, reitero que en el esmero de ceñirnos a la doctrina de la deferencia, no podemos permitir que prevalezca un fallo condenatorio tras observar que la prueba no establece la culpabilidad del acusado más allá de duda razonable. Pueblo v. Irizarry, supra, pág. 790. La Opinión del Tribunal se ampara en la gesticulación de la testigo para sostener la convicción, pero… ¿cuáles fueron esos

gestos? No los puedo identificar, pues no surgen del expediente. Siendo así, no queda otra que pensar que una mayoría de esta Curia se está imaginando cómo fueron los gestos para poder justificar el resultado al que hoy arribo. Esa inferencia, escudada en una mal invocada deferencia, bastó para rebatir la presunción de inocencia que nos cobija a todos.

Lamentablemente he notado cómo en años recientes este Tribunal ha tomado posturas que se alejan del Derecho cuando estamos ante casos relacionados con el tema de delitos sexuales. Véanse, Pueblo v. Cardona López, 196 DPR 513 (2016) (Resolución); Pueblo v. Toro Vélez, 212 DPR 919 (2023) (Sentencia). Aun cuando entiendo la preocupación que puede generar este tipo de asuntos, **nuestra labor como jueces no es resolver a favor de la postura que nos resulte más agradable y contra la que nos parezca abominable**. Pueblo v. Cardona López, supra, pág. 516. (Resolución) (Expresión disidente, Juez Asociado Martínez Torres). En el balance de los mejores intereses de la sociedad, nuestro trabajo es, y siempre será, resolver conforme al Derecho.

Por esta razón, disiento respetuosamente del curso de acción seguido por este Tribunal, no sin antes advertir, como he hecho en el pasado, que "[c]uando se fuerza el Derecho en busca de una solución preferida el fantasma del mal precedente reaparecerá a atormentarnos". RPR & BJJ Ex Parte, 207 DPR 389, 507 (2021) (Op. disidente, citando a

Caraballo Ramírez v. Acosta, 104 DPR 474, 489 (1975), Op. disidente del Juez Asociado Señor Díaz Cruz).

Del mismo modo, "en el afán de llegar a una solución que parezca simpática no podemos lacerar un derecho tan prominente…", como la presunción de inocencia. RPR & BJJ Ex Parte, supra, pág. 504. (Op. disidente, Juez Asociado Martínez Torres). En situaciones simpáticas es muy fácil reconocer derechos constitucionales. Empero, es parte de nuestra labor hacerlo también ante las situaciones más antipáticas y penosas de nuestra sociedad. Los individuos tienen unos derechos constitucionales y nuestra obligación es protegerlos.

V

Por los fundamentos antes expuestos, disiento respetuosamente. Ante la falta de evidencia suficiente sobre uno de los elementos esenciales del delito de incesto, correspondía revocar la convicción del señor Negrón Ramírez sobre ese cargo. Consecuentemente, hubiese sostenido la sentencia del Tribunal de Apelaciones.


                              RAFAEL L. MARTÍNEZ TORRES
                              Juez Asociado