ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>LUIS RODRÍGUEZ HERNÁNDEZ<br><br>Apelante | KLAN202300283 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Crim. Núm. FLA2019G0158 Y 0159<br><br>POR: ART. 5.04 LEY 202-2000 |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Torres, el Juez Salgado Schwarz y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

El señor Luis Rodríguez Hernández, (en adelante, el apelante o señor Rodríguez Hernández) comparece mediante recurso de apelación en el que solicita que revoquemos una *Sentencia* emitida el 14 de marzo de 2023 por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante ese dictamen, el señor Rodríguez Hernández fue declarado culpable por un Jurado de dos (2) cargos por Artículo 5.04 Ley Núm. 404-2000 y, por ende, fue sentenciado a cumplir una pena de cinco (5) años en cada caso a ser cumplidos consecutivos entre sí para un total de diez (10) años. Se le impuso, además, el pago de la Pena Especial por la cantidad de $300 en cada caso.

Luego de analizar los argumentos presentados por la parte apelante, a la luz de la prueba oral que surge de las transcripciones sometidas, *confirmamos* la Sentencia del foro primario.

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución del Juez Roberto J. Sánchez Ramos.

## -I-

Por hechos ocurridos el 22 de junio de 2018 el Ministerio Público presentó contra la parte apelante dos (2) cargos por el Artículo 5.04 de la Ley Núm. 404-2000, 25 LPRA sec. 458 (c), (en adelante, Ley de Armas),[2] un (1) cargo por el Artículo 5.15 de la Ley de Armas, 25 LPRA sec. 458n y un cargo por violación al Artículo 93 del Código Penal, Ley Núm. 146-2012 según enmendada, 33 LPRA sec. 5142. En Juicio que fue celebrado por Jurado, el 9 de septiembre de 2022, fue rendido el siguiente veredicto: En cuanto al Artículo 93 del Código Penal, *supra*, hubo un veredicto no válido en derecho con un resultado anotado por el jurado de nueve (9) a favor y tres (3) en contra. En cuanto al Artículo 5.15 Ley de Armas, *supra*, hubo un veredicto no válido en derecho con un resultado anotado por el jurado de nueve (9) a favor y tres (3) en contra. Sobre los dos (2) cargos por el Artículo 5.04 de la Ley de Armas, el jurado encontró al acusado culpable por unanimidad.

Celebrado el acto de lectura de sentencia, el Tribunal se pronunció de la siguiente forma: en el caso FLA2019G0158 por Artículo 5.04 de la Ley de Armas, *supra,* cinco (5) años de cárcel y en el FLA2019G0159 por Artículo 5.04 de la Ley de Armas, *supra*, cinco (5) años de cárcel. También dispuso, que los años de la condena debían ser cumplidos consecutivos entre sí para un total de diez (10) años. Además, le impuso el pago de la Pena Especial por la cantidad de $300 en cada cargo.

Inconforme con tal determinación, el señor Rodríguez Hernández instó el recurso de apelación que nos ocupa en el que apela el veredicto emitido en los dos casos por Artículo 5.04 de la

---

[2] La Ley Núm. 404-2000, según enmendada, fue derogada en su totalidad por la Ley Núm. 168-2019, 25 LPRA sec. 461, también conocida como la Ley de Armas de Puerto Rico de 2020. Debido a que los hechos ocurrieron antes del 11 de diciembre de 2019, hacemos constar que es de aplicación la Ley Núm. 404-2000.

Ley de Armas, *supra*. Con tal propósito imputó la comisión del siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UN FALLO DE CULPABILIDAD POR LAS INFRACCIÓN DOS [sic] ARTICULO 5.04 DE LA LEY DE ARMAS (LEY 404-2000) AUNQUE NO FUE DERROTADA LA PRESUNCIÓN DE INOCENCIA Y NO SE ESTABLECIERON LOS ELEMENTOS DEL DELITOS MÁS ALLÁ DE DUDA RAZONABLE.

Tras los trámites procesales de rigor conducentes a obtener la transcripción del juicio, el apelante presentó su alegato suplementario el 22 de diciembre de 2022 y el 29 de enero de 2024 el Ministerio Público presentó el Alegato del Pueblo. Con el beneficio de la transcripción oral estipulada, los autos originales que fueron solicitados al TPI y los alegatos de las partes, procedemos a adjudicar bajo los fundamentos que a continuación exponemos.

**-II-**

**-A-**

La presunción de inocencia es un derecho de rango constitucional en nuestro ordenamiento jurídico. Nuestra Carta Magna expresamente dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho [...] a gozar de la presunción de inocencia". CONST. PR, Artículo II, Sec. 11 LPRA, Tomo 1. Adviértase que, "la presunción de inocencia es un derecho fundamental que le asiste a toda persona acusada de delito en nuestro ordenamiento jurídico". *Pueblo v. Colón González*, 209 DPR 967, 999 (2022); *Pueblo v. Santiago et al.*, 176 DPR 133, 142 (2009).

El Tribunal Supremo de Puerto Rico ha establecido como salvaguarda de ese derecho constitucional que, para rebatir la presunción de inocencia, la prueba que presente el Ministerio Público debe ser una que satisfaga el estándar probatorio máximo en nuestro ordenamiento jurídico. Es decir, la prueba presentada

por el Estado debe ser una que demuestre la comisión de los hechos imputados más allá de duda razonable. Regla 110 (f) de Evidencia de Puerto Rico, 32 LPRA AP. VI.; *Pueblo v. Negrón Ramírez*, 2024 TSPR 41; 213 DPR __ (2024). Esto es, "prueba suficiente para derrotar la presunción de inocencia que cobija a un acusado es aquella que permite hallar a un ciudadano culpable de la comisión de un delito al probar, más allá de duda razonable, todos los elementos del delito y la conexión del acusado con éstos". *Pueblo v. Toro Martínez*, 200 DPR 834, 855-856 (2018).

Es sabido que, el cumplimiento de este estándar no supone la necesidad u obligación de probar la comisión del delito con certeza matemática. *Íd.,* pág. 856. Lo que nuestro máximo Foro Judicial ha reiterado es que

> **Lo que se exige, como imperativo constitucional, es "prueba satisfactoria y suficiente en derecho […] que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido"**. (Énfasis en el original). *Pueblo v. Toro Martínez, supra,* pág. 856. Así pues, **para derrotar la presunción de inocencia y probar la comisión de un delito más allá de duda razonable, no se requiere que toda duda posible tenga que ser destruida, sino que se derrote la duda razonable, la que vendría siendo aquella duda fundada en el raciocinio de todos los elementos de juicio envueltos en el caso y que no constituye una duda especulativa o imaginaria**. *Pueblo v. Negrón Ramírez, supra, Pueblo v. García Colón I,* 182 DPR 129, 175 (2011); *Pueblo v. Bigio Pastrana, supra,* págs. 760-761; *Pueblo v. Gagot Mangual,* 96 DPR 625, 627 (1968).(Énfasis nuestro).

El cumplimiento de determinar si se satisfizo el estándar probatorio de más allá de duda razonable que impone la Regla 110 de Evidencia, *supra*, corresponde inicialmente al juzgador de hechos, quien vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos. Así las cosas, en casos criminales con derecho a juicio por Jurado, esta función le corresponde al Jurado, el cual está constitucionalmente encomendado a recibir la prueba, adjudicar los hechos en base a ésta y aplicar el derecho según le

instruya el tribunal. *Pueblo v. Negrón Ramírez, supra; Pueblo v. Santa Vélez*, 177 DPR 61, 65-66 (2009); *Pueblo v. Negrón Ayala*, 171 DPR 406, 414 (2007).

A tenor con esta garantía constitucional, nuestro sistema de derecho establece que una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. Regla 301 de Evidencia, 32 LPRA Ap. VI., R. 301. A ese hecho o grupo de hechos previamente establecidos se le denomina "hecho básico". Al hecho deducido mediante la presunción se le nombra "hecho presumido". *Íd.* Como parte de este prisma normativo, se dispone en la Regla 303 de Evidencia, *supra*,:

> Cuando en una acción criminal la presunción perjudica a la persona acusada, tiene el efecto de permitir a la juzgadora o al juzgador inferir el hecho presumido si no se presenta evidencia alguna para refutarlo. **Si de la prueba presentada surge duda razonable sobre el hecho presumido, la presunción queda derrotada**. La presunción no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada. Reglas de Evidencia, *supra*. (Énfasis suplido).

Así las cosas, en la esfera penal, el efecto de una presunción "depende de si esta beneficia o perjudica al acusado. Ciertamente, una presunción que favorece al Ministerio Público y perjudica al acusado tiene que ser una presunción controvertible, permisiva y débil". *Pueblo v. Colón González, supra,* pág. 1001; *Pueblo v. Nieves Cabán*, 201 DPR 853, 873 (2019). En el ámbito criminal, el efecto de esta categoría de presunción estriba esencialmente en que no se transfiere al acusado el peso de la prueba ni la obligación de persuadir al juzgador. "No obstante, aun si este no estableciera la inexistencia de tal nexo causal, para que esta presunción satisfaga el criterio de probabilidad y, por ende, sea permisible contra un acusado, ***es esencial que la inferencia no sea la única base en la cual descansa la determinación de culpabilidad"***. *Pueblo v.*

*Meléndez Monserrate,* 2024 TSPR 80; 213 DPR ___ (2024); (Bastardilla, énfasis suplido y subrayado en el original).

*-B-*

Las Reglas de Evidencia también establecen el criterio rector a seguir con respecto al estándar de evaluación y suficiencia de la prueba. 32 LPRA Ap. VI. R. 110. De esta forma, podemos señalar que la evidencia directa es aquélla que prueba directamente el hecho en controversia. *Íd.* En cambio, la evidencia indirecta o circunstancial es aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual junto a otros ya establecidos puede razonablemente inferirse el hecho en controversia. *Íd.*

Cónsono con lo anterior, las Reglas de Evidencia, *supra,* han sido interpretadas por nuestro más Alto Foro, donde en cuestión de la prueba testimonial se ha expresado que "**la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho […]. Así pues, el testimonio de éste de ser creído puede ser suficiente en derecho para sostener un fallo condenatorio aun cuando dicho testimonio no fuera perfecto**". 32 LPRA Ap. VI, R.110 (d); *Pueblo v. Chévere,* 130 DPR 103, 113 (1995) (Énfasis suplido). Sobre esta ultima premisa, nos comenta el profesor Chiesa Aponte que, ante este precepto, "no se reconoce exigencia alguna de corroboración de cierto tipo de testimonio". ERNESTO L. CHIESA APONTE, REGLAS DE EVIDENCIA COMENTADAS, 51 (Ed. Situm, 2016)

*-C-*

El Artículo 5.04 de la Ley de Armas, *supra,* vigente al momento de los hechos, es producto inherente de reglamentación sobre posesión y portación de armas de fuego. *Pueblo v. Colón González, supra,* pág. 978. Esta, reglamentaba todo lo

concerniente a la portación y uso de arma sin licencia ni permiso y, en lo pertinente, el precitado apartado legal disponía:

> **Toda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave** y convicta que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años, sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta [...]. (Énfasis suplido).

El Tribunal Supremo de Puerto Rico estableció que para que el Estado logre la convicción de un acusado por "**el delito de portación ilegal tiene que presentar prueba en el juicio sobre: (1) la portación del arma y (2) la ausencia de permiso a esos efectos. Allí expresamos que <u>la falta del permiso de portación de arma</u>** *<u>es un elemento esencial e imprescindible</u>"*. *Pueblo v. Meléndez Monserrate, supra*; *Pueblo v. Negrón Nazario*, 191 DPR 720, 752 (2014). (Bastardilla y subrayado en el original).

De igual forma, nuestro más alto Foro expresó que:

> [...] independientemente del uso que se le dé al arma de fuego, para fines exclusivos del Art. 5.04 de la Ley de Armas de 2000, *supra*, ***<u>el legislador lo que quiso codificar como delito era el mero ejercicio de portar un arma sin licencia o transportar un arma o parte de esta sin el debido permiso</u>***. La intención legislativa del articulado en cuestión resulta relevante cuando además dispone que constituye un "agravante" cualquier situación en la que se utilice el arma para la comisión de un delito o su tentativa. **En otras palabras, independientemente del delito cometido con un arma, portarla sin licencia de portación por sí solo es un delito**. *Pueblo v. Meléndez Monserrate, supra.* (Bastardilla y subrayado en el original); (Énfasis nuestro).

Por otro lado, en el caso particular de los delitos cuyo elemento esencial es la posesión ilegal de armas, "**se puede imponer responsabilidad criminal, no sólo cuando el acusado tiene la posesión inmediata del objeto, sino también cuando el imputado ejerce una posesión constructiva sobre el mismo**".

*Pueblo v. Meléndez Rodríguez, supra*, pág. 621. (Énfasis nuestro). Así las cosas, "como la posesión es un elemento del delito, es indispensable probar que el imputado tenía la posesión actual y directa sobre el objeto. Esta posesión directa implica dominio, control y tenencia física sobre el objeto ilegal". *Pueblo en interés menor FSC*, 128 DPR 931, 939(1991). De igual forma, se ha aclarado que la posesión constructiva es aquella en la que, a pesar de no tener la posesión inmediata o física del objeto, la persona "tiene el poder e intención de ejercer control o dominio sobre el mismo". *Íd.*; *Pueblo en interés menor FSC, supra, pág.* 940. **Otra instancia en la que se puede dar la posesión constructiva es cuando varias personas con conocimiento comparten control sobre el objeto delictivo**. *Pueblo v. Rivera Rivera*, 117 DPR 283, 294 (1986). (Énfasis nuestro).

Para finalizar, **"[e]n estos casos 'se impondrá responsabilidad penal a todas las personas que tengan conocimiento, control y manejo del bien prohibido, aun cuando no lo tengan bajo su posesión inmediata'**. (citas omitidas). La posesión directa y la constructiva, como cualquier otro tipo de elemento de un delito, se pueden probar con evidencia directa o circunstancial". *Pueblo v. Meléndez Rodríguez, supra*, pág. 621-622; (Énfasis suplido).

### -D-

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir las determinaciones del foro primario por sus propias apreciaciones. *Pueblo v. De Jesús Mercado*, 188 DPR 467, 478 (2013). Las decisiones de los tribunales de instancia merecen gran flexibilidad y deferencia, debido a que es el foro que

conoce las particularidades del caso. *Citibank et al. v. ACBI et al.,* 200 DPR 724, 735 (2018).

El Tribunal Supremo de Puerto Rico ha establecido que, como regla general, un tribunal revisor tiene vedado intervenir con la adjudicación de credibilidad de los testigos, ni puede sustituir las determinaciones de hechos que, a su amparo, haya efectuado el foro primario basado en sus propias apreciaciones. *Pueblo v. De Jesús Mercado,* 188 DPR 467, 478 (2013); *Pueblo v. García Colón I,* 182 DPR 129, 165 (2011); *Pueblo v. Cabán Torres,* 117 DPR 645, 654 (1986). Así las cosas, luego de que el juzgador de los hechos ha escuchado, ponderado, valorado y determinado si cierto testimonio es creíble, debemos guiarnos por parámetros estrictos al revisar su adjudicación. Es decir, al revisar una determinación atinente a una condena criminal, hay que tener presente que la apreciación de la prueba corresponde al foro sentenciador, salvo que se deba revocar porque surgió de una valoración apasionada, prejuiciada o parcializada, o porque su dictamen sea claramente erróneo. *Pueblo v. Toro Martínez, supra,* pág. 858; *Pueblo v. García Colón I, supra,* pág. 166; *Pueblo v. Bonilla Romero,* 120 DPR 92, 111 (1987).

En ese contexto, nuestro máximo foro judicial ha reiterado que, "un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia". *Argüello v. Argüello,* 155 DPR 62, 79 (2001). Pero, si la apreciación de la prueba no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la evaluación se distancie de la realidad fáctica o esta es inherentemente imposible o increíble tenemos la responsabilidad ineludible de intervenir. **Por lo tanto, "la facultad de los tribunales apelativos para sustituir el criterio de los tribunales**

**de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, no exista base suficiente que apoye su determinación"**. *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 220 (2021).

Como parte de nuestra función revisora, en nuestro ordenamiento judicial le damos deferencia al juzgador de hechos en cuanto a su apreciación de la prueba testifical porque, al ser una tarea llena de elementos subjetivos, es quien está en mejor posición para aquilatarla. *Rosado Muñoz v. Acevedo Marrero*, 196 DPR 884, 917 (2016). Pues, es el Tribunal de Primera Instancia el quien tuvo la oportunidad de oír y ver el comportamiento de los testigos. *Íd.* **Por ello, cuando la evidencia directa de un testigo le merece entero crédito a este, ello es prueba suficiente de cualquier hecho**. *Íd.*; *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920 (2015) (Énfasis suplido).

### -*III*-

El señor Rodríguez Hernández fue acusado de un cargo al amparo del artículo 93 del Código Penal, supra, un (1) cargo al amparo del artículo 5.15 de la Ley de Armas, supra, y de los dos (2) cargos al amparo del artículo 5.04 de la antedicha ley. La parte apelante sostiene que al Jurado hallarlo no culpable de los delitos de asesinato y apuntar y disparar un arma de fuego, resulta jurídicamente improcedente que se sostengan las demás convicciones. El argumento de la parte apelante es que, al Jurado no haber "creído" los testimonios de los testigos para hallarlo culpable por los delitos de asesinato y apuntar y disparar un arma de fuego, las demás convicciones son insostenibles, por lo que procedía declararlo *"no culpable"* por todos los delitos imputados. El señor Rodríguez Hernández señala como único error que incidió el juzgador de instancia al emitir un fallo de culpabilidad aun cuando el Ministerio Público no derrotó la presunción de inocencia

que le cobija a este, toda vez que no se establecieron los elementos del delito más allá de duda razonable. *No le asiste la razón.*

La parte apelante sostuvo que el Estado no probó los elementos del delito ni tampoco probó más allá de duda razonable el delito de portación ilegal. Esto debido a que, según adujo, los testigos que ofrecieron declaración estaban implicados en la muerte. Añadió además, que dichos testimonios fueron contradictorios, y que debían ser examinados con desconfianza. Por último, arguyó que no existía evidencia directa toda vez que, no se ocuparon las armas.

El señor Rodríguez Hernández fue encontrado culpable por dos (2) cargos por el Artículo 5.04 de la Ley de Armas, *supra.* Fue declarado culpable por un arma pequeña color negra, la cual fue descrita por los testigos del Ministerio Público, por mantener control directo sobre el arma que no fue ocupada. Según se desprende del testimonio de la señora Nelly E. Rivera, a preguntas de la representación legal de la parte apelante, esta declaró que:

> R: Eh, luego de que, verdad, eh, Berty... veo a Berty que puso la lata de medalla en... que la tenía a mano 'i'... en la mano izquierda, la puso en el bonete de mi vehículo, eh, él se dirige por al frente de mi vehículo, después que dejó la lata de medalla, por el frente del vehículo de Arnaldo, para es... a, a meterse por el lado donde está Berto ya, golpeando a Arnaldo, para poder golpear a Arnaldo, pero, Berto le dice a Berty que se fuera por el otro lado. **En ese momento Berty, cuando va a, a irse por el frente del vehículo veo que tiene una pistola pequeña, color negra. No recuerdo en qué mano, este, la tenía, pero, la vi. Entonces, esa 'pe'...esa pistola era, más o menos, verdad, aproximadamente, de este tamaño. Era más pequeña que la que había visto anteriormente**.[3]
>
> .      .      .      .      .      .      .      .
>
> R: Porque era muy pequeña. Era bien... Era pequeñísima.[4]

Este testimonio fue corroborado por el señor Wilberto Díaz. Donde también declaró que:

---

[3] Transcripción Prueba Oral Estipulada pág. 311; líneas 9-17.
[4] *Íd.*, pág. 313, línea 5.

R: Pues, después de eso, cuando estoy dando los culetazos yo vi que Berty como que pasa por frente del carro y después 'pa' entremedio de los dos (2) carros, y abrió la puerta de... del pasajero. **Y ahí pegó a darle puños a Arnaldo en la cabeza, y de momento sacó la pistola de la cintura**.[5]

. . . . . . . . .

R: **Era una pistola pequeña negra**.
P Una pistola pequeña negra.
R **Sí, era pequeña, no era muy grande**.[6]

Por otro lado, la parte apelante fue encontrada culpable por violación al artículo 5.04 de la Ley de Armas, *supra*, por la posesión constructiva de una pistola color plateado como de ocho (8) pulgadas, que se encontraba en la posesión directa del testigo de cargo, el señor Wilberto Díaz. Dicha arma tampoco fue ocupada, empero, surge de la declaración de la señora Rivera que:

P: Y, ¿qué pasó ahí?
R:  Eh, Arnaldo estaba sentado en, en el área de conductor y él a... eh, Berto le abrió la puerta, verdad, de conductor a el vehículo de Arnaldo, eh, la abrió y le... les... **le muestra como una pistola, le muestra una pistola, color plateada, como de este tamaño, puedo decir que era 1 la, la pistola... [...] Como ocho (8) pulgadas**.[7] (Énfasis suplido).

Según fue vertido ante el Tribunal de Primera Instancia, el señor Díaz testificó que:

P Ok. Y una vez usted le da ese puño en la cara a Arnaldo y él cae, las piernas en el área del chofer, y el rostro al lado del asiento del pasajero, ¿qué... ¿qué es lo próximo que pasa?
R Pues cuando yo le di ese puño él cayó hacia allá, y **yo tenía una pistola de bala salvas blanca, aniquelada, una pistola**.
Ok. Usted tenía, ¿qué? ¿Perdón?
R **Una pistola plateada de bala de salva**.

. . . . . . . . .

P Ok. Y le pregunto, esa pistola plateada, ¿de qué tamaño era? La suya.
R Era grande, plateada.[8]

Es menester señalar que, las partes estipularon que el señor Rodríguez Hernández no contaba con permiso legal para portar

---

[5] *Íd.*, pág. 648, líneas 12-15.
[6] *Íd.*, pág. 650, líneas 1-3.
[7] Transcripción Prueba Oral Estipulada pág. 306, líneas 16-18; pág. 307, líneas 1-2,12.
[8] *Íd.,* pág. 647, líneas 1-2, 10-11.

armas de fuego.[9] Tal hecho también fue corroborado mediante el testimonio del agente Corchado Sierra, quien declaró que tras su investigación en el Sistema del Negociado de Armas de la Policía de Puerto Rico certificó que la parte apelante no poseía licencia de armas.[10]

Como parte de las garantías constitucionales que salvaguardan nuestro sistema judicial, la presunción de inocencia debe ser la piedra angular en un proceso criminal contra un ciudadano. El estándar o quantum de prueba en los casos criminales empleado es que, el Estado tiene que probar que el imputado cometió el delito más allá de duda razonable. Ahora bien, en lo que respecta a la portación ilegal de armas, esta presunción se mantiene como evidencia prima facie de portación ilegal en la medida en que el Estado tiene la autoridad para exigirle una licencia de portación de un arma a todo ciudadano que desee ejercer ese derecho. *Pueblo v. Meléndez Monserrate, supra.*

Como se ha desarrollado en nuestro sistema de derecho, previamente expuesto, para que se configure el delito de portación ilegal al amparo del artículo 5.04 de la Ley de Armas, *supra*, es necesario que se cumplan dos elementos: (1) la portación ilegal y (2) la ausencia de permiso a esos efectos. Es por ello que, puede concluirse que, a base de la prueba desfilada, tanto la oral como la documental, el juzgador de los hechos, en este caso el Jurado, determinó que el señor Rodríguez Hernández poseyó directamente un arma de fuego negra pequeña y un arma plateada constructivamente, cumpliendo, así como el primer elemento del delito. Por otro lado, ante la ausencia de la licencia para la portación de armas, puede concluirse que se cumplió el segundo

---

[9] *Íd.*, pág. 996; líneas 9-14; pág. 997, líneas 3-16.
[10] *Íd.*, pág. 997, líneas 3-19; pág. 998 líneas 1-9. (Exhibit 8 del Ministerio Publico en el Juicio en su Fondo).

elemento del delito tipificado en el artículo 5.04 de la Ley de Armas, *supra,* más allá de duda razonable.

En fin, examinada minuciosamente la transcripción de la prueba oral, y la prueba documental admitida por el TPI, no encontramos razón por la cual debamos intervenir con las apreciaciones realizadas por el Jurado y el foro de origen. Tal y como reseñáramos, la prueba vertida y creída demostró que se cumplieron los elementos del delito más allá de duda razonable. Fue el juzgador de instancia quien pudo apreciar el comportamiento de los testigos y la forma en que declararon, así como la naturaleza de su testimonio, previo a otorgarle la credibilidad que en efecto le otorgó al igual que a la prueba desfilada ante el Jurado.

Por tal motivo, como foro revisor, a no ser que se encuentren presente los elementos de pasión, prejuicio, parcialidad o error manifiesto, estaremos impedidos de intervenir. *González Hernández v. González Hernández, 181 DPR 746,* 776-777 (2011). A base de estas circunstancias, concluimos que no procede nuestra intervención con la apreciación de la prueba.

### *-IV-*

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones